## IN RE WILL OF CARL NAGEL[1]
## HENRY NAGEL v. HAROLD NAGEL.[1]

April 9, 1926.

No. 25,214.

**Findings sustained as to execution of will.**

1. The findings that the will offered for probate was duly executed, that the testator then possessed testamentary capacity, and that he was not under undue influence when making it, are sustained by the evidence.

**When testimony respecting purpose of testator's prior will may be excluded.**

2. Where there is no issue raised as to the validity of a prior will, it is to be assumed that the purpose and intention of the testator regarding the disposition of his property are truly reflected therein, and testimony of his declarations touching such purpose and intention previous to its execution is properly excluded.

**Plans of beneficiary of prior will immaterial in contest over subsequent will.**

3. The plans of the chief beneficiary in such prior will, formed in reliance of the making of that will, are immaterial in a contest upon the probate of the subsequent will.

Wills, 40 Cyc. p. 1023 n. 29; p. 1165 n. 87; p. 1270 n. 63; p. 1285 n. 26; p. 1312 n. 13.

Appeal by contestant of a will from an order of the district court for Brown county, Olsen, J., denying his motion for a new trial. Affirmed.

*Mueller & Erickson,* for appellant.

*Somsen, Dempsey & Flor,* for respondent.

HOLT, J.

The appeal is by the contestant of a will from an order denying a new trial.

[1]Reported in 208 N. W. 425.

The instrument, executed on November 21, 1924, by Carl Nagel, since deceased, was duly admitted as his last will and testament by the probate court of Brown county and on appeal by the district court. Its probate was contested by appellant upon the grounds that the instrument was not executed in accordance with the statute, that Carl Nagel was not of sound mind and that the execution thereof was procured by the fraud, artifice and undue influence exercised over the testator by Harold Nagel and others. The court found against contestant upon each proposition.

The due execution of the will and testator's testamentary capacity are so clearly established by the record that no space need be devoted thereto in this opinion.

Carl Nagel was in his usual health when the will was made on November 21, 1924, and apparently continued in that condition up to the time he dropped dead, three days later. He was then about 70 years old. He had been married twice. In the first marriage, he had five children, one of whom was contestant; in the second, two, one being Harold Nagel. In 1919 while his second wife was living he made a will giving each of his children $1,000, and the remainder to the wife. After the wife's death and on September 20, 1923, he made another will revoking all former wills and giving his farm to his son Henry, the contestant, on condition that he pay $1,000 to each of his six brothers and sisters and $1,000 to the children of his son August, deceased. A little over a year thereafter, the will in controversy was made. Thereby the household goods, wearing apparel and ornaments were given to contestant. All other property of which he should die seized or possessed, his executor was directed to sell and divide into seven equal parts; each child and the children of any deceased child to have one part. Outside the personal property willed appellant, the estate consisted of a 190-acre farm adjoining the city of New Ulm, valued at from $12,000 to $20,000.

It appears that Henry, the contestant, 41 years old at the time of the trial, was the oldest son. He left the father's home when 25 years of age and took up farming for himself as a renter, being

furnished with a team of horses and some cows by his father. His brother August, three years younger, remained and ran the farm for the father until 1919, when he died, leaving a widow and three children. Carl Nagel then let the farm to others but was not satisfied, and in 1923 leased it to Henry who late in the fall moved in, the father reserving to himself two rooms in the house and some other privileges. About the time the lease was made, but before Henry's family moved onto the farm, the second will was made. The evidence discloses that thereafter the relations between the father and the son's wife were not always amicable. Whether that had anything to do with the determination of making the last will is uncertain. There is evidence of a desire to treat all the children alike and upon more mature reflection it would not be strange that he should come to the conclusion that the second will unduly preferred Henry. There is some contention that he was very fond of Harold, the youngest child, but no partiality in the distribution of the estate was shown him in the last will. He did in a small way seek to reimburse Henry for his moving in as a tenant by giving him the personal property mentioned.

In view of the situation it cannot be said that the last will is unreasonable or unnatural for a father to make, and the disposition of his property as therein made furnishes no inference that undue influence was exerted over the testator by Harold or anyone else. A person has a right to change his will at any time, and no claim can well be made that because Carl Nagel did not wait much over a year after he had executed one will before executing another that that in itself tends to prove him to have been acting under undue influence. The only plausible circumstance, but from which no more than a mere suspicion or conjecture can be drawn, is that the one who drew the will, Rev. Hohn, was a friend and creditor of Harold, having aided him in obtaining a training as a doctor and to whom Harold was $4,000 in debt for such aid. It is argued that Rev. Hohn and Harold were both interested in having a more substantial bequest than the one in prospect for the latter under the prior will. Both men deny knowledge of that will.

Again it is said, the gift of a mouth organ, the haircut and the shave to the testator when visited by Rev. Hohn and Harold in the afternoon of November 21, just before the will was drawn, suggest the use of undue influence. It is to be remembered that the burden of proof on that phase of the case was upon the contestant, and surmises or conjecture based upon inconsequential circumstances cannot be accepted as adequate proof, especially where, as here, the will made gave Harold no more than any other child, not even as much as contestant. The evidence was such that, in our opinion, a finding of undue influence would not have been justified.

Declared intentions of the testator in respect to the disposition of his property are admissible in a controversy such as the present, and the court received all testimony offered of such declarations made subsequent to the second will, but rejected those made prior thereto upon the ground that there was no issue made as to incompetency or undue influence in the making of that will, and therefore it must be taken as expressing the testator's deliberate purpose when of sound and competent mind, free from all improper influence. The learned trial court proceeded on the right theory.

Upon objection, the wife of contestant was not permitted to testify that she and her husband had planned to purchase the farm at Evan, Minnesota, in which she had an interest, but, upon the inducement of Carl Nagel that if they would come and live with him he would make his will so that they would have his farm on condition that a certain sum of money be paid to the other children, had taken up their abode with testator in reliance upon the promise to receive the farm. There was no error in the ruling. Carl Nagel did make such a will. The plans of contestant and his wife had no bearing upon the issues involving the validity of the last will. This was not an action for specific performance of a contract to devise the farm to contestant.

The order is affirmed.