*In re* COTTRELL'S ESTATE.

APPEAL OF GUYOR.

1. WILLS—UNDUE INFLUENCE—BURDEN OF PROOF.
    Before the burden of establishing want of undue influence is cast upon proponent, it must be shown that fiduciary relations existed.[1]

2. SAME—FIDUCIARY RELATIONS.
    That testator's daughter was living with him at the time he made his will in her favor, and that she assisted him in his business affairs, did not establish fiduciary relations

[1]Wills, 40 Cyc. p. 1151.
Burden of proof of undue influence in will contest, see notes in 17 L. R. A. 494; 36 L. R. A. 724, 733.

casting upon her the burden of establishing want of undue influence.[2]

3. SAME—DIRECTED VERDICT.

Directed verdict in favor of proponent, *held*, justified by the evidence.[3]

4. SAME—OPINION EVIDENCE—MENTAL COMPETENCY.

Testimony by a witness not possessing medical skill that, in his opinion, on the morning before the will was drawn, testator was in a state of coma, if such testimony was competent, *held*, insufficient to carry the question of testator's mental competency to the jury, in view of the uncontroverted testimony of three witnesses that when the will was executed testator was mentally competent.[4]

5. SAME.

If testator was competent when the will was executed, it is valid, irrespective of his temporary condition before or after.[5]

6. SAME — UNDUE INFLUENCE—OPPORTUNITY ALONE INSUFFICIENT TO TAKE QUESTION TO JURY.

Evidence that proponent had opportunity to exert undue influence, standing alone, is insufficient to carry the question of undue influence to the jury.[6]

7. EVIDENCE—HYPOTHETICAL QUESTIONS.

A hypothetical question which contained some statements not supported by the testimony and omitted some which were established was properly excluded.[7]

Error to St. Clair; Law (Eugene F.), J. Submitted July 8, 1926. (Docket No. 134.) Decided July 22, 1926.

Myra Cottrell Feagan presented for probate the last will of Richard A. Cottrell, deceased. The will was allowed in the probate court, and Harry P. Guyor and others appealed to the circuit court. Judgment for proponent on a directed verdict. Contestants bring error. Affirmed.

---

[2]Wills, 40 Cyc. p. 1153; [3]Id., 40 Cyc. p. 1169; [4]Id., 40 Cyc. p. 1041; [5]Id., 40 Cyc. p. 998; [6]Id., 40 Cyc. p. 1166; [7]Evidence, 22 C. J. §§ 800, 803, 804; Wills, 40 Cyc. p. 1331.

*Hugh H. Hart* and *Henry Baird,* for appellants.

*Shirley Stewart* and *John W. Breining* (*Eugene F. Black,* of counsel), for appellee.

FELLOWS, J.     Testator had been twice married. By his first wife he had two children, Harry and Emma, and by his second wife a daughter, Myra. Harry, one of the contestants, married and went to Milwaukee to live in 1904.     Emma married a man named Guyor, incurring her father's disfavor thereby. She died several years ago leaving seven children, who are the other contestants.     They did not visit their grandfather nor did he them.     Myra remained at home and on her mother's death assumed the keeping up of his home and assisted in the office work at his coal yard.     She married a man named Feagan who was acceptable to her father, and the young couple remained with him until his death.     They had one child.     In 1918 he made a will which gave nominal bequests to the grandchildren and divided the balance of his property between Harry and Myra.     In the fall of 1924 he became so ill as to be unable to be about.     He gradually grew worse until he died.     Myra looked after the coal business in addition to her household duties and nurses were employed to care for testator.     On two occasions he was in a comatose condition.     It is said he suffered a slight stroke.     Harry was sent for and came twice; on the second occasion he remained about a month.     On February 14, 1925, the will in controversy was executed.     It was drawn by the same attorney who drew the former will and who resided at Marine City, the home of testator.     By it nominal bequests were given the grandchildren, real estate worth from $10,000 to $12,000 was given Harry, real estate worth $10,000 was given to Myra, and the residue to her.     The amount of the personal property does not appear in the record, but counsel frequently

referred to the estate as amounting to $30,000. The trial judge directed the jury to render a verdict sustaining the will, and contestants review the case here.

The proponent called the two subscribing witnesses, showed the due execution of the will, and rested. The subscribing witnesses were neighbors, familiar with the affairs of the Cottrell household. Contestants developed on cross-examination of them that Myra was and had been in charge of testator's home, assisted him in his business and when he became ill took charge of and operated the coal yard. When proponent rested they asked for a directed verdict on the ground that fiduciary relations existed between her and her father, that the burden was upon her to establish want of undue influence which she had not done. The motion was overruled and properly so. Before the burden can be cast on proponent, it must be shown that the fiduciary relations exist (*In re Conner's Estate,* 230 Mich. 399) ; and the fact that she was living with testator when the will was made did not establish such relations (*In re Carlson's Estate,* 218 Mich. 262) ; nor does the fact that she assisted him in his business affairs establish such relation (*Blackman* v. *Andrews,* 150 Mich. 322). There is nothing upon this record which would justify adopting the rule applicable to fiduciary relations.

We are likewise convinced that the trial judge was right in directing a verdict sustaining the will. When testator was in a state of coma he, of course, could not execute a will. Outside of these occasions his condition was that of a man of his age stricken with a fatal malady. He was then 73 years old, had suffered from kidney trouble for some time, and had valvular trouble of the heart, which caused labored breathing and had suffered a slight stroke interfering with the use of his arm. He talked with a brother Mason, expressed a desire to live, and shed tears over his

condition; his physical condition prevented long conversations with friends who called to see him. In his vigor he was a strong-willed, mentally-alert, able business man. The testimony discloses disease weakened this physical condition but we have searched this record in vain to find testimony of a single irrational act, a single evidence of delusions, one act indicative of mental incapacity. But it is urged that there was testimony which was stricken out that would justify a submission of this question to the jury. Contestants called a brother of testator as a witness. He testified that on the morning before the will was drawn he went to testator's house and stepped to the bedroom door and his brother was either sleeping or in a coma, he did not know which; he made no attempt to arouse him so far as the record discloses; the next day he resumed the stand, said he had examined a dictionary and found out what coma meant and expressed the view that testator was in a coma and mentally incapacitated to execute a will. This was received over objection and later stricken out. It is quite doubtful if this lay witness was competent to give evidence requiring medical skill, but, be that as it may, three witnesses who were present when the will was executed, the two subscribing witnesses and the lawyer who drew it, all testify that when it was executed testator was possessed of all his mental faculties and competent to make a will. This testimony is clear, convincing and uncontroverted. If competent when the will was executed, the will is valid irrespective of his temporary condition before or after. *Pierce* v. *Pierce,* 38 Mich. 412; *In re Weber's Estate,* 201 Mich. 477; *In re Cochrane's Estate,* 211 Mich. 370. The only evidence on the question of undue influence was that proponent had opportunity. This alone is not sufficient. The will was not an unnatural one. Proponent had prac-

tically given her life's work to her father; she had been a dutiful daughter. The real estate was divided practically equally between her and Harry. The personalty was given to her. What it amounted to does not appear but it was substantial in amount. Her services to him had likewise been substantial. Under the following authorities, and many others which might be cited, the trial judge correctly directed a verdict sustaining the will: *Hibbard* v. *Baker*, 141 Mich. 124; *Blackman* v. *Andrews, supra; In re Allen's Estate*, 230 Mich. 584; *In re Morris' Estate*, 228 Mich. 555; *In re Nosek's Estate*, 229 Mich. 559; *In re Cochrane's Estate, supra; In re Bulthuis' Estate*, 232 Mich. 129; *In re Williams' Estate*, 185 Mich. 97, and authorities there cited.

Contestants called a doctor who was not acquainted with the testator in his lifetime and propounded a hypothetical question. An objection that it did not contain the facts established by the testimony was sustained. The hypothetical question contained some statements which were not supported by the testimony and omitted some which were established. The ruling was not erroneous. *In re Marx's Estate*, 201 Mich. 504; and we may well repeat what was said by Mr. Justice CHAMPLIN, speaking for the court, in *Spratt* v. *Spratt*, 76 Mich. 384:

"But what weight is opinion evidence entitled to where it appears that, unaided by any one, he does in fact make a will disposing of all his property, dictating consecutively the bequests and devises he sees fit to make to a large number of relatives, near and remote? What weight or reliance should be given to the opinion of persons, interested or disinterested, professional or lay, to the effect that a person, who has in fact dictated a will disposing of all his property by successive bequests and devises, requiring consecutive thought and the exercise of memory, was unable to transact any matter of business which required for its completion several hours of time, recalling of various people and

facts, or that he was mentally incapacitated to understand the nature and extent of his property, and the number and relation of those who were the proper objects of his bounty, so as to make a will devising his estate?"

The judgment will be affirmed.

BIRD, C. J., and SHARPE, SNOW, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred.