## In re LITTLEJOHN'S ESTATE.

1. WILLS—MENTAL COMPETENCY—EVIDENCE—SUFFICIENCY.

Dislike of a son-in-law, produced in testatrix's mind by complaints of his wife of his ill-treatment of her, which was responsible for her determination that he should have none of her property and a trust provision in her will in favor of the grandchildren, the daughter having died, is no evidence of mental incompetency to make a will.

2. SAME—COMPETENCY TO MAKE WILL.

That a 71-year old woman had been ill, suffering physical impairment, with some incidental mental loss, held, no evidence of mental incompetency to make a will, in view of the fact that she alone with her attorney gave directions relative to the disposition of her property, alone stated the objects of her bounty and the portion each was to have and in effect dictated the substance of the will.

3. SAME—TESTIMONY AS TO TRIFLING MATTERS INSUFFICIENT ON WHICH TO BASE OPINION OF MENTAL INCOMPETENCY.

Testimony by lay witnesses as to testatrix's habits of personal untidiness, her failing to exhaust subjects of conversation, her arbitrary and dictatorial manner toward her maids, and her extreme particularity relative to certain household duties are matters too trifling to afford basis for an opinion of mental incompetency to make a will.

4. SAME—DIRECTED VERDICT.

In a will contest case, under all of the evidence, held, that a verdict should have been directed for the will.

Error to Wayne; Jayne (Ira W.), J.     Submitted April 13, 1927.     (Docket No. 82.)     Decided July 29, 1927.

William Littlejohn presented for probate the last will of Emilie Littlejohn, deceased.     The will was allowed

[1]Wills, 40 Cyc. pp. 1023, 1079; [2]Id., 40 Cyc. p. 1006; 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444; 28 R. C. L. 86; 4 R. C. L. Supp. 1799; 6 R. C. L. Supp. 1703; [3]Evidence, 22 C. J. § 700; [4]Wills, 40 Cyc. p. 1333.

in the probate court, and John W. Smith and another appealed to the circuit court.     Judgment for contestants.     Proponent brings error.     Reversed, and judgment ordered entered for proponent.

*Wilkinson, Lowther, Wilkinson & O'Connell,* for appellant.

*Lodge & Brown,* for appellees.

CLARK, J.     Emilie Littlejohn, 71 years old, made a will in May, 1921, and died nearly two years later. She had two sons, William and John.     Her daughter Anna had died in 1918 leaving a husband, Arthur H. Spens, and three children.     The will gives to William household goods appraised at $632 and the boulevard property so-called, appraised at $12,000, and it bestows the residue, appraised at upwards of $79,000, one-third to William, one-third to John, and one-third in trust for the children of Anna.     John's wife is a sister of Spens.     Testatrix stated in her will that she gave the boulevard property to William for the reason that he had "devoted a greater part of his time and attention to taking care of me in my old age," and she stated an established fact.

The will was contested on usual grounds by John and by Spens as guardian of his children, but at the conclusion of proof contestants limited their contest to one ground, mental incompetency, and that issue went to the jury, whose verdict was against the will. Judgment was entered on the verdict and proponent, William, brings error.

The question is that a verdict for the will should have been directed.     Contestants, there being no claim of undue influence or fraud, are met at the outset with what is always a difficult if not an insuperable circumstance, that testatrix alone with her attorney, alone gave directions relative to the disposition of her prop-

erty, alone stated the objects of her bounty and the portion each was to have. She alone in effect dictated the substance of the will. And it is further significant that, after the will was in form, she, herself, caused its somewhat elaborate trust provision to be corrected and amplified. The will was read to her and duly and formally executed. But contestants contend that testatrix lacked mental capacity to do what she did do and they seek to support the contention by testimony of both lay and medical witnesses. Counsel for contestants have summarized most skillfully under many heads the evidence urged to show mental incompetency. Testatrix had been vigorous and strong willed. In the later years she was afflicted with hardening of the arteries, high blood pressure, and some kidney trouble. She was once acutely ill of pneumonia. She had what is called by lay witnesses a stroke, from which she did not recover fully. The stroke followed soon after her daughter's death. That at the time of making the will illness and age had caused some physical impairment and that there had been some incidental mental loss, there can be no doubt. But the question is her mental competency to make the will. The will itself tested by the facts of the record is not surprising. It is the reasonable outgrowth of her environment, of her life, of her obligations, of the claims on her bounty, and of her likes and dislikes.

She disliked Spens. She was determined that he should have none of her property, and this is one reason, at least, for the trust in favor of the children of Anna and Spens. Testatrix's state of mind in this regard had been produced by complaints of ill treatment by Spens made to her by Anna. This dislike, so founded and reasoned, is not evidence of mental incompetency.

Lay witnesses told of testatrix's habits of personal untidiness in her last years, of her failing to exhaust

subjects of conversation, of her arbitrary and dictatorial manner toward her maids, and of her extreme particularity relative to certain household duties. But we have held again and again that these trifling matters afford no basis for an opinion of mental incompetency to make a will. Testatrix made some irrational statements while acutely ill. She was not so ill when the will was made and such statements are disregarded. Testatrix grieved greatly for Anna's death. She often wept and continued to weep. That her love for her only daughter and her sorrow for her passing should be manifest in much grief and many tears is not evidence of mental incompetency.

A medical witness answering a long hypothetical question reviewing the evidence adduced by contestants to show mental incompetency, gave as his opinion that testatrix was not competent to make the will. The answer to this is quoted from *Spratt* v. *Spratt*, 76 Mich. 384:

"But what weight is opinion evidence entitled to where it appears that, unaided by any one, he does in fact make a will disposing of all his property, dictating consecutively the bequests and devises he sees fit to make to a large number of relatives, near and remote? What weight or reliance should be given to the opinion of persons, interested or disinterested, professional or lay, to the effect that a person, who has in fact dictated a will disposing of all his property by successive bequests and devises, requiring consecutive thought and the exercise of memory, was unable to transact any matter of business which required for its completion several hours of time, recalling of various people and facts, or that he was mentally incapacitated to understand the nature and extent of his property, and the number and relation of those who were the proper objects of his bounty, so as to make a will devising his estate? The court rightly instructed the jury that there was no claim in the case that there was any fraud or undue influence practiced upon the testator in making the instrument; and he also instructed them that, beyond the questions incident to

its execution, the only question was whether, at the time the will was executed by Mr. Spratt, he was competent to make it—whether he was of sound mind.

"Now when, in the absence of fraud or undue influence, it is shown that the testator either wrote or dictated the will produced, the fact is established that he was capable, mentally and physically, of doing whatever the instrument shows was done; and the only question is, does the instrument on its face indicate that it is the emanation of an unsound mind, when applied to the facts and circumstances upon which, and under which, it was intended to operate, namely the estate disposed of, and the manner of disposition?"

And from *Pierce* v. *Pierce,* 38 Mich. 412:

"We referred in *Latham* v. *Udell,* 38 Mich. 238, and we think it not improper to refer again to the wrongs done under color of law, by the attempts which are becoming so common as to be dangerous to the security of private property, to overthrow wills because they do not suit the notions of those who determine their validity. The right to make a will as a testator chooses is as sacred as any other right, and a finding that the will is not valid which is based on any other foundation than a conscientious conviction of actual incapacity shown by the testimony, is a disgraceful outrage on justice and a plain violation of the oath under which the conclusion is asserted. It is incumbent on courts to keep out of these cases everything which is merely calculated to create prejudice without throwing light on capacity, and prevent the establishment of fallacious tests which no one would think of acting on in business transactions, to throw doubt on testamentary capacity."

And from *In re Ver Vaecke's Estate,* 223 Mich. 419:

"When a man goes to an attorney, and, without aid or suggestion, directs the provisions of his will, and furnishes specific descriptions of all the property he owns, it is a waste of time to discuss the question as to whether he was mentally competent to dispose of his property as he did."

See *In re Dowell's Estate,* 152 Mich. 194; *In re Wynn's Estate,* 193 Mich. 223; *Page* v. *Beach,* 134

Mich. 51; *Leffingwell* v. *Bettinghouse,* 151 Mich. 513; *Fraser* v. *Jennison,* 42 Mich. 206; *Schneider* v. *Vosburgh,* 143 Mich. 476; *In re Murray's Estate,* 219 Mich. 70; *In re Ferguson's Estate, ante,* 616.

Dr. Robert T. Tappert, a witness for contestants, had treated testatrix, saw her about 75 times during the two years preceding the making of the will.    He testified fairly.    We quote a part of it as we think it states the facts as established by the competent evidence in the record:

"*Q.* Well, let me ask you this, don't you think that on May 27, 1921, that Mrs. Littlejohn knew who her children were?

"*A.* Undoubtedly.

"*Q.* There isn't much question about that is there, doctor?

"*A.* I don't think she ever forgot that.

"*Q.* And don't you also believe that on May 27, 1921, that she knew what claims, if any, these children had on her?

"*A.* I would say yes, except that she was very suggestive, it seems to me, in these moods and depression.

"*Q.* At any rate she had certain ideas on this subject?

"*A.* Yes, sir, she did.

"*Q.* And those ideas were strong ideas were they not?

"*A.* Yes, sir, very strong.

"*Q.* Mrs. Littlejohn was not in the least hesitant about expressing her likes and dislikes as to her children or any other relatives for that matter, was she?

"*A.* She told me of her likes and dislikes on frequent occasions.

"*Q.* She had pretty well established ideas along that line, didn't she?

"*A.* Yes, I think she did.

"*Q.* Let me ask you this, don't you believe that on May 27, 1921, that Mrs. Littlejohn knew how much property she owned and possessed?

"*A.* Yes, sir, in a general way I think she did.

"*Q.* She was quite an old lady at that time?

"*A.* Yes, sir."

Also:

"*Q.* Well, with that in mind, doctor, do you think Mrs. Littlejohn could have understood this will on May 27, 1921?

"*A.* She could have understood the main points of it. I do not believe she could have understood all of this legal verbiage that the will contains, but I think the reason that she wanted her children and her daughter's children to have equal shares, I think her mind was capable of doing that.

"*Q.* And you further think, doctor, that she understood that the shares of the children, that is, the children of the deceased daughter and Mr. Spens, would be tied up in trust for some time?

"*A.* Yes, I think she could. She told me her reasons for her dislike of the son-in-law. I think that was probably her purpose in putting this phrase in the will."

After careful consideration of all the evidence we think a verdict should have been directed for the will.

Reversed and cause remanded with direction to enter judgment for proponent on the reserved motion, and notwithstanding the verdict, with costs to proponent.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred.