[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 41 
November 24, 1922, Lewis N. Lembrich made and executed his last will and testament. May 23, 1925, he died. The will was admitted to probate in Washtenaw county. Appeal was taken by Ray Lembrich and Wanda F. McCarbery to the circuit court. Contestants allege testator was, at the time the will was executed, mentally incompetent to make and execute it, and that it was the product of the undue influence of Edith M. Smith, the proponent. Proponent and contestants are children of testator. Edith May Smith is a daughter by testator's first wife. *Page 42 
Contestants are children by his second wife. The will, except its formal parts, provides:
"I hereby give, bequeath and devise all of the rest, residue and remainder of my estate, real, personal, or mixed, to my beloved daughter, Edith M. Smith, of R. F. D., Bowling Green, Ohio, to have and to hold unto herself, her heirs and assigns forever.
"In making this provision for my said daughter, I am not unmindful of my other children, and have purposely left them from the provisions of my will for reasons best known to me."
The case was tried in the circuit court for Washtenaw county, a verdict rendered for contestants, and proponent brings error.
Testator and his wife did not get along well together. His wife filed a bill for divorce in Monroe county. Mr. Rathbun of Tecumseh appeared as attorney in the divorce case for testator. A property settlement was arranged between him and his wife out of court and embodied in the decree of divorce. This property settlement was carried out a few days later at the bank in Milan. Testator made, executed, and delivered to his divorced wife a deed of his interest in the home farm worth $11,000, and she paid him $5,000. There was and is no question raised of testator's mental capacity to make this contract of settlement, carry out and consummate it by deed, receive the $5,000 paid to him by his divorced wife, make, execute, and deliver the deed disposing of his interest in this property, on the day that the will was made. It requires less mental capacity to make a will than to make a deed. Kempsey v. McGinniss, 21 Mich. 123. Thepost mortem testimony of the divorced wife as to testator's mental incapacity is belied by her acts and conduct on the day the will was made. The scrivener who drew the will had been testator's attorney in the divorce case and subsequent settlement. After the execution and delivery of the deed in consummation *Page 43 
of this settlement and the receipt by testator of the $5,000 paid him, the divorced wife and contestants left the bank. Testator and the scrivener went into the back room of the bank. The testator told him how he wanted the will drawn. It was drawn accordingly. Not only did testator intelligently dictate the manner in which he desired his property to be disposed of, but he talked about investing the money that had just been paid to him, and gave as a reason for leaving contestants out of the will that if proponent was to share in his property he had to leave it to her, because he had done nothing for her, and contestants would undoubtedly share at her death the entire property of the divorced wife. He, too, was dissatisfied with contestants' attitude toward him in the divorce proceedings. The will was signed by the testator and witnessed by the scrivener and the assistant cashier of the bank, both of whom testify to the mental capacity of the deceased. There was testimony that the mental and physical condition of the testator changed in later life; that he was comparatively uncommunicative and sometimes gave way to tears and talked of self-destruction; that he was melancholy and mentally depressed. Testator died of cancer of the liver in 1925, a disease productive of agony, not levity. There is testimony testator visited proponent after the divorce, accompanied by his former wife, but the record is devoid of testimony legitimately tending to prove undue influence exercised by proponent in procuring the will. The proof is undisputed that, after the divorce and settlement and after the will was made, testator continued to live in the vicinity of his former residence. He was an interested member of the order of Odd Fellows, and attended lodge regularly. He participated in the degree work, transacted ordinary business, invested and cared for his money, conversed about the lodge work *Page 44 
and other matters intelligently, visited other lodges as a member of the degree team of the home town, and always did the work creditably, visited his son and daughter, contestants in this case, attended with his former wife the funeral of proponent's deceased son, told the landlady, where he roomed and boarded most of the time after the will was made, of his property, where it was invested and the income received by him from it, visited with the deputy sheriff and many others, worked out for wages in 1924, and apparently passed as a sound, level-headed man of at least ordinary intelligence in the community where he lived and had lived for 15 years. He was treated by Dr. Hardy of Tecumseh for his physical ailments. He told the doctor of his troubles, and the doctor testifies he saw nothing to indicate the mental incapacity of the testator. Dr. Marshall, a physician associated with the University hospital and St. Joseph Mercy Hospital at Ann Arbor, a specialist in internal medicine, treated the testator in his last illness, and, though produced by contestants, was not asked as to testator's mental capacity.
Contestants and their witnesses are for the most part interested. They testify to nothing inconsistent with testator's mental capacity to make the will at the time it was made. The opinions of witnesses are no stronger than the facts upon which they are based. Witnesses should, in general, testify only to facts. A lay witness ought not to be permitted to give his opinion as to the mental incapacity of a testator except after having detailed the facts and circumstances upon which his opinion is based. In questions of alleged mental incompetency the facts and circumstances detailed by the witness forming the basis of his opinion must legitimately tend to show mental incompetency. The opinion of a witness as to the ultimate fact in issue can have no greater weight than the force of the accumulated *Page 45 
facts detailed by him. To permit a witness to express an opinion upon facts not disclosed to the jury is to permit him to place before the jury incompetent testimony. The witness ought not to be permitted to pass upon the force, effect, weight, or sufficiency of the facts detailed by him, or to usurp the functions of the jury, which is to pass upon such facts. To permit a witness to express his opinion as to the mental capacity of a testator, not based upon facts legitimately tending to support such opinion, is to permit the witness to invade the province of the jury and to place his construction upon facts which should be passed upon by the jury themselves. It enables the witness to give secondary rather than primary evidence and deprives the opposite party of the essential right of cross-examination. Lamb v. Lippincott,115 Mich. 611; Ramsdell v. Ramsdell, 128 Mich. 110; Page v.Beach, 134 Mich. 51; Paul v. Clements, 176 Mich. 251.
There was, of course, the ever-present expert psychiatrist, who had never known, seen, or heard of the testator in his lifetime but who testified, in answer to a hypothetical question, to testator's mental incompetency.
In Spratt v. Spratt, 76 Mich. 384, it is said:
"What weight is opinion evidence entitled to where it appears that, unaided by any one, he does in fact make a will disposing of all his property, dictating consecutively the bequests and devises he sees fit to make to a large number of relatives, near and remote? What weight or reliance should be given to the opinion of persons, interested or disinterested, professional or lay, to the effect that a person, who has in fact dictated a will disposing of all his property by successive bequests and devises, requiring consecutive thought and the exercise of memory, was unable to transact any matter of business which required for its completion several hours of time, recalling of various people and facts, or that he was mentally incapacitated to understand the nature and extent of his property, and the *Page 46 
number and relation of those who were the proper objects of his bounty, so as to make a will devising his estate? * * * When, in the absence of fraud or undue influence, it is shown that the testator either wrote or dictated the will produced, the fact is established that he was capable, mentally and physically, of doing whatever the instrument shows was done; and the only question is, Does the instrument on its face indicate that it is the emanation of an unsound mind, when applied to the facts and circumstances upon which, and under which, it was intended to operate?"
See, also, In re Cottrell's Estate, 235 Mich. 627; In reLittlejohn's Estate, 239 Mich. 630.
Testator was a single man. The property disposed of by the will was his. His former wife had just received more than one-half of the property they possessed. On the day of the settlement with her the deed and the will were made. His children were all of mature years. They were not co-owners with him of the property disposed of by the will. If testator had sufficient mental capacity to make the will in question he could dispose of his property as he saw fit. The law provides how the property of intestates shall descend and be distributed. It permits any one of sound mind to make a testamentary disposition of his property. That testator acted under the law of wills and directed the descent and distribution of his property instead of permitting it to pass under the statutes of descent and distribution is no evidence of his mental incapacity. That children are not mentioned in a will is sometimes mentioned as indicating the testator did not have them in mind as objects of his bounty, but here it is shown by the will itself and by the uncontradicted testimony of the scrivener the testator did have contestants in mind and purposely gave his property to proponent. He gave his reasons to the scrivener for not making contestants beneficiaries under his will. If he was capable of reasoning and taking reasonable action, he was *Page 47 
capable of making a will, and neither court nor jury has a right to substitute their views for those of the testator. On the day the will was made testator settled his property matters with his wife, deeded her his interest in the home farm, received and presumably receipted for $5,000 paid to him by her, accepted the cash, counseled with his attorney as to its investment, talked with his attorney of his children, dictated the terms of the will, and, after it was prepared, signed and executed it.
"When a man goes to an attorney, and, without aid or suggestion, directs the provisions of his will, and furnishes specific descriptions of all the property he owns, it is a waste of time to discuss the question as to whether he was mentally competent to dispose of his property as he did."In re Ver Vaecke's Estate, 223 Mich. 419.
See, also, In re Littlejohn's Estate, 239 Mich. 630.
The trial court should have directed a verdict in favor of proponent. Hibbard v. Baker, 141 Mich. 124; Blackman v.Andrews, 150 Mich. 322; In re Williams' Estate, 185 Mich. 97;In re Cochrane's Estate, 211 Mich. 370; In re Morris' Estate,228 Mich. 555; In re Nosek's Estate, 229 Mich. 559; Inre Allen's Estate, 230 Mich. 584; In re Bulthuis' Estate,232 Mich. 129; In re Cottrell's Estate, 235 Mich. 627.
The judgment is reversed, and the circuit court directed to enter a judgment for proponent, who will recover costs.
FEAD, C.J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred. *Page 48