## IN RE ESTATE OF KATHERINE ENYART.
### ISABELLE LANE AND ANOTHER, CONTESTANTS.
### MINNESOTA LOAN & TRUST COMPANY AND ANOTHER, PROPONENTS.[1]

May 2, 1930.

No. 27,663.

[1]Reported in 230 N. W. 781.

*Joss & Parker* and *Victor M. Petersen,* for appellant-cotestants.
*Cobb, Hoke, Benson, Krause & Faegre,* for respondent-proponents.

HILTON, J.

Contestants appeal from an order denying their motion for a new trial.

This action involves the last will and testament and a codicil thereto of Katherine Enyart, both of which instruments were ad-

mitted to probate. Contestants severally filed objections to the allowance of the same on three alleged grounds: (1) Failure to comply with the statutory requirements for testamentary execution (this objection was later abandoned); (2) mental incapacity of testatrix to execute the will; (3) undue influence exerted by two beneficiaries, Sarah A. Jordan and Alex E. Jordan, her husband.

After a hearing the will and codicil were sustained and letters testamentary ordered issued to the Minnesota Loan & Trust Company and Alex E. Jordan, the appointees and nominees named in the will as executors. Appeal was taken to the district court, where without pleadings being framed the cause was tried upon the petition and objections thereto filed in the probate court. The request of contestants that a jury trial be had on the issues of undue influence and mental incapacity was granted. A jury was impaneled, but no specific issues were framed for submission to it. Proponents produced evidence of attesting witnesses and made out a prima facie case of due execution and mental competency. Evidence on behalf of the contestants was then introduced in support of their contentions, and when finished proponents asked and were granted the privilege of resting for the purpose of making certain motions with the right to reopen in case the motions were denied. The motions in effect were that the court (a) discharge the jury from a consideration of the case; (b) make and adopt findings for proponents on all issues; and (c) if the discharge be denied that the jury be directed to find on all issues for proponents. The court discharged the jury, adjourned the case, and at the appointed time made and filed findings in favor of proponents resulting in a confirmation of the decision made by the probate court.

The court found that both the will and codicil were executed strictly in conformity with the statutory requirements; that the testatrix (aged 67) was at the time of their execution of sound and disposing mind and memory and that said will and codicil were not procured by means of undue influence, fraud or duress; that the named executors were qualified, competent and willing to act as such; that none of the allegations contained in the objections of

the· contestants (except as to their relationship to testatrix and their respective addresses) were sustained by the evidence. The necessary conclusions of law followed, and judgment was ordered accordingly.

Testatrix at the time of her death (May 18, 1928) left as her sole heirs and next of kin three sisters, Sarah A. Jordan, Isabelle Lane and Mary Marsh, the latter two being the contestants. By the terms of the will (executed August 8, 1927) a larger share of the property was given to Mrs. Jordan, her husband and their family than to either of the other sisters and their respective families. By the codicil made November 10, 1927,· a quarter section of land in Nebraska was given to a Lane nephew and his wife.

Contestants' assignments of error present: (1) Alleged error of the court in discharging the jury; (2) alleged errors in the findings and conclusions of the trial court and in denying contestants' proposed findings and conclusions; (3) alleged error in one ruling upon evidence.

■ Of the proponents' three requests, the first two were granted and the third denied. The court did not specify the grounds upon which such action was taken.

From certain remarks of the court to the jury in explaining the situation, it is attempted to draw an inference that the whole matter was being disposed of as a question of law. The order granting the first two of proponents' requests was without limitation or reservation. It is manifest that the court intended to decide for itself all issues involved whether questions of law or fact. The fact that the court granted those two rather than the third, the latter being the one to direct the jury to return a verdict for proponents, is further indicative of the lack of intention on its part to decide the issues as questions of law. Had such been its intention, there would have been a directed verdict. The court in characterizing the motion stated that it was "to relieve the jury from deciding whatever issues may be involved." These issues of course included those of fact. There were no ambiguities in the court's findings which would require a reference to the statement made by

the court to the jury in discharging it. · Even if found in a memorandum, on the record here the express findings of fact and conclusions following therefrom could not be impeached or contradicted by such statements. Kipp v. Clinger, 97 Minn. 135, 106 N. W. 108; Riebel v. Mueller, 177 Minn. 602, 225 N. W. 924.

In a will contest there is no· right to a jury trial. G. S. 1923 (2 Mason, 1927) §§ 9288 and 8988; Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598. The granting of a jury trial of the issues in such a case rests within the absolute discretion of the trial court. It may submit such issues to a jury under a situation such as we have here either with or without the consent of the parties. It had the right to withdraw the issues from the jury ·even if the issues had been framed, which they were not here. It is also to be noted that the parties did not consent to a jury trial; proponents objected thereto. 6 Dunnell, Minn. Dig. (2 ed.) § 9837, et seq. and cases cited; Garner v. Reis, 25 Minn. 475; Smith v. Barclay, 54 Minn. 47, 55 N. W. 827. Under the situation contestants cannot successfully allege error. See also Grattan v. Rogers, 110 Minn. 493, 126 N. W. 134; Lewis v. Murray, 131 Minn. 439, 155 N. W. 392; Morgan v. City of Albert Lea, 129 Minn. 59, 151 N. W. 532; 6 Dunnell, Minn. Dig. (2 ed.) § 10242. The case was for the determination of the court as if no jury had ever been impaneled therein.

· ■ An examination of the record clearly shows that there was no evidence that required a finding of lack of mental capacity or even permitted such finding. Testatrix had a large estate with many different items of property. Evidence is undisputed that without a memorandum or list to guide her, she enumerated to Mr. Gleason, the attorney who drafted the will, the disposition she wished to make of the various properties; that she knew of their location and values; that keepsakes and personal effects were also bequeathed; that the names of the beneficiaries and the reasons for remembering them were disclosed. In fact it was a remarkable exhibition of a mental grasp of the situation. There were 16 specific groups of gifts, besides a provision for the three sisters as residuary legatees. The evidence shows that Mrs. Enyart was a woman of keen mind

and retentive memory with a will of her own. The record discloses no reliance by contestants on the proposition of general mental incapacity. It is likely that it was only advanced as a measure of caution and perhaps as an aid to other contentions. It is admitted that she had general testamentary capacity, but it is claimed that there was a lack of certain capacity because of statements made by Mrs. Jordan and delusions which arose therefrom. The claim as to insane delusions invalidating the will is unfounded as will later appear.

Counsel for contestants in his opening statement to the jury expressly stated that it was not claimed that Mrs. Enyart was insane or that she was abnormal. The claim was however made that because of insinuations, suggestions, and lies told her she was prejudiced against her two sisters so that she did not exercise the normal affection or normal use of her mind and mentality that she would have exercised had it not been for those statements.

A far-reaching finding asked for by contestants relative to the claimed attempt of the Jordans to undermine the love and affection of deceased for them (contestants) and to cause her to become angry at and to hate them was properly denied. The evidence did not warrant it. In this will they and members of their families were substantial beneficiaries. Anger and hate do not bring about such results.

Neither in counsel's opening statement to the jury nor in the motion for a new trial was the claim made that testatrix was subject to insane delusions. Such claim appears for the first time in contestants' brief here. If intended to be advanced it should have been presented to the trial court. 1 Dunnell, Minn. Dig. (2 ed.) § 401. The request for a jury was not, as stated in contestants' reply brief, predicated on "lack of testamentary capacity and insane delusions" but on "undue influence and mental incapacity."

If false statements were made to Mrs. Enyart that caused her to be estranged from her other sisters, the proof is far from sufficient to establish "insane delusions" that would affect the validity of this will. If there had been such false statements, they only resulted

"in a mistaken belief or idea"; these would not show a lack of mental capacity. Applying the necessary tests to testatrix, we hold that the evidence established her capacity to make the will and codicil. 6 Dunnell, Minn. Dig. (2 ed.) § 10208. There was nothing in the lengthy interviews that testatrix had with Mr. Gleason warranting the supposition that any "insane delusions" were at all affecting a proper disposition of her property.

The test as to mental capacity has to do with the time of the execution of the will. The lawyer draftsman testified as to circumstances from which the inference is inescapable that testatrix knew of what her property consisted; what she wanted to do with it and why. Three witnesses, other than the lawyer, two of whom were witnesses to the execution of the will and the other a witness to the execution of the codicil, and all of whom had an opportunity to observe testatrix, her actions, her appearance, conduct, etc. testified that in their opinion she was possessed of the requisite mental capacity. The burden is upon the proponents of the will to establish execution in accordance with statutory requirements and at first to prima facie show the testamentary capacity of the maker of the will. This was done. In that situation the contestants had the right to introduce evidence tending to show a lack of such capacity. Proponents might subsequently introduce evidence in support of their contentions. The testamentary capacity was abundantly proved. 6 Dunnell, Minn. Dig. (2 ed.) § 10209. As having a bearing upon this feature of the case see Church of St. Vincent de Paul v. Brannan, 97 Minn. 349, 107 N. W. 141; In re Cottrell's Estate, 235 Mich. 627, 209 N. W. 842; Spratt v. Spratt, 76 Mich. 384, 43 N. W. 627; In re Sturtevant's Estate, 92 Or. 269, 178 P. 192, 180 P. 595; In re Ver Vaecke's Estate, 223 Mich. 419, 194 N. W. 135; In re Littlejohn's Estate, 239 Mich. 630, 215 N. W. 55.

The burden of proof to establish undue influence was upon contestants. The proof must be clear and convincing. 6 Dunnell, Minn. Dig. (2 ed.) § 10240, et seq. and cases cited. It is to be noted that Mrs. Enyart told Mr. Gleason that the Jordans did not know anything about the provisions that were being made for them in the will. They were not present when the interviews with Gleason

were had or when the instruments were executed. There is no evidence as to the approximate value of the estate, but there is enough to show that it is a large one. Mrs. Enyart did not die for over nine months after the making of the will, during a goodly part of which time she was not with the Jordans. Had there been undue influence at the time of the execution of the will, there was plenty of opportunity to make a change in it. Letters written by Mrs. Enyart before making the will at times indicated that she intended to treat the three sisters alike; at other times a contrary purpose was shown. Neither of these advance statements created any obligation. She had a right to give more property to the Jordans than to the others if she so desired. 1 Page, Wills (2 ed.) § 745; In re Will of Nagel, 167 Minn. 63, 208 N. W. 425; In re Hess' Will, 48 Minn. 504, 51 N. W. 614, 31 A. S. R. 665. An opportunity to exercise undue influence does not establish it, especially in cases where, as here, there was no evidence of a fiduciary or confidential relationship. 6 Dunnell, Minn. Dig. (2 ed.) § 10239, and cases cited.

Although but a small portion of the facts in this case have been detailed, the important and controling ones have; a further recital is not necessary. Suffice it to say that the decision of the trial court on all points involved had the necessary support in the evidence and under the familiar rule must be sustained.. 1 & 6 Dunnell, Minn. Dig. (2 ed.) §§ 411 and 10212. Everything considered, the trial court was justified in saying:

"It seems to me that if this will should be set aside and declared void on the testimony that we have here that few, if any, wills could be permitted to stand."

A last will and testament ought not to be readily set aside. To do so is no light matter; it is in effect making a new will that passes the property of the deceased into channels provided by law in cases of intestacy without the consent of the owner. Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541. It is necessary that the circumstances relied on to show undue influence be such as taken all together convince the trier of fact that the mind of the testator was subjected to that of some other person so that the will is that of

the latter and not of the former; mere ground of conjecture or guess is not enough. See In re Estate of Olson, 176 Minn. 360, 223 N. W. 677.

Many unwarranted inferences are adroitly drawn from the evidence and the most is made of them. However, considering the case in its entirety, we have no hesitancy in affirming the decision of the trial court.

Affirmed.

