189 N.W.2d 695 (1971)
In re ESTATE of Marion S. JENKS, decedent.
Warren S. CARTER, Jr., Appellant,
v.
FIRST TRUST COMPANY OF ST. PAUL, Respondent.
No. 42875.
Supreme Court of Minnesota.
August 20, 1971.
Rehearing Denied September 14, 1971.
*696 Rice & Efron and Howard J. Kauffman, Minneapolis, for appellant.
Baudler & Baudler, Austin, for respondent.
Heard before KNUTSON, C. J., and NELSON, MURPHY, PETERSON, and KELLY, JJ.

OPINION
MURPHY, Justice.
Appeal from a judgment of the District Court of Mower County in a will contest case determining that the last will and testament of Marion S. Jenks be allowed and admitted to probate and affirming the order of the probate court of that county allowing the will.
Contestant, Warren S. Carter, Jr., is the grandnephew of the decedent, Marion S. Jenks, and had she died intestate, he would have been the sole heir to her estate. His three daughters, Susan Carter Well, Mary Carter Bellows, and Deborah Ann Carter, are the beneficiaries under the terms of a trust created by the will in the principal amount of $30,000, over which trust the executor of the will, First Trust Company of St. Paul, is named as trustee. After various bequests, the will provides that the residue go to the American Red Cross. It appears that the estate had a value at the date of death in excess of $1 million, and after payment of the bequests, the amount left to the residuary legatee would be in excess of $830,000.
The contestant's principal complaint is that the decedent did not know the extent of her holdings and their true value and that she never intended to leave to the American Red Cross the large sum which constitutes the residue of the estate. The trial court observed that the contestant "only contests, on the issue of testamentary capacity, that portion of the will of Marion S. Jenks which deals with the residuary clause wherein the American Red Cross is principal beneficiary."
1. The issue with reference to the testamentary capacity of the decedent was fully tried. An examination of the record supports the findings of the trial court that the decedent possessed testamentary capacity at the time of the execution of the will and that there was no credible evidence to the contrary. Although decedent executed the will on August 2, 1965, at the age of 92, the record as a whole establishes that she was a remarkably alert and intelligent woman in spite of her advanced years. The mass of documentary evidence submitted includes considerable correspondence of the decedent. After examining this evidence, the court observed:
"* * * Reading her letters, which one must, to learn something more about Marion S. Jenks, her attitude, her outlook, her knowledge of things, her complete compassion and regard for others * * *, and in the mind's eye to know Marion S. Jenks, without ever having met her, one can only conclude that, if in her 93rd year and her 94th year, she could typewrite the letters that she did, and express with clarity the thought that she did and manifest the wit that she did, she must have been a remarkable person."
In considering the pivotal issue, the trial court in a helpful memorandum stated:
"It is claimed by contestant that Marion S. Jenks lacked testamentary capacity because she did not actually know the outside boundaries and full extent of her property on August 2nd, 1965. No other element included in the test *697 to determine testamentary capacity is seriously challenged."
The bulk of the decedent's assets consisted of stocks and bonds managed by the proponent of the will, First Trust Company of St. Paul. She received from the trust company monthly reports of the transactions in her account, and in November of each year she received an annual report, including an inventory of the securities in her account. The evidence indicates that as late as November 19, 1965, 3½ months after the execution of the will, she received an annual report which showed the market value of her specified assets to be $907,566. Since the great weight of the evidence fully established that the decedent was, as one witness put it, "a very brilliant woman, very astute for her age, and in the vernacular, `sharp as a tack'," it would be expected that she read the reports submitted to her and was aware of the facts they contained.
It would appear from the evidence that the contested will contains the same general plan of distribution as six previous wills had contained. See, Nieman v. Schnitker, 181 Ill. 400, 55 N.E. 151. The many letters and other writings of the decedent which were received in evidence continued until shortly before her death and indicate that the decedent maintained a keen and active mind. It is the generally recognized rule that testamentary capacity requires only that the testator have capacity to know and understand the nature and extent of his bounty, as distinguished from the requirement that he have actual knowledge thereof. The subject is discussed as follows in 57 Am.Jur., Wills, § 65:
"Some authorities in stating the general rule by which testamentary capacity is determined use language which is subject to the implication that such capacity depends upon the testator's knowledge of the extent of his property, the objects of his bounty, and similar matters. It need not be shown, however, that he actually recollected all such facts; it is sufficient if he was mentally capable of doing so. The rule that requires the testator to be capable of ascertaining in his mind the items of his property and the natural objects of his bounty does not mean that he must have such information collected in his mind at one time. It is sufficient that he be able to retain the specified facts in mind long enough to have his will prepared and executed. Persons of large means rarely know precisely what property they own or even the nature and present condition of every considerable item of it."
No useful purpose would be served by an extensive citation of decisions and other authorities bearing generally upon the test or definition of testamentary capacity. The following statement from 20 Dunnell, Dig. (3 ed.) § 10208, presents a fair summary of Minnesota decisions:
"* * * The test is not whether the testator did the best or the wisest or the theoretically just thing in his will; but, did he have sufficient active memory to collect in his mind and comprehend, without prompting, the condition of his property, his relations to his children and other persons who might properly be his beneficiaries, and the scope and bearing of his will, and to hold these things in his mind a sufficient length of time to perceive their obvious relations to each other, and be able to form some rational judgment in relation to them. A person who has mental power to understand and transact ordinary business has capacity to make a valid will. The truth of this cannot be doubted, but it must not be understood to mean that that degree of mental power and vigor is requisite to testamentary capacity. Mental perception and power to think and reason of a lesser degree may be all that is requisite to the full understanding of everything involved in the execution of a will. The real question is, did he, at the time of making the instrument purporting to be his will, have such mind and memory as enabled him to understand the particular business in which he was then engaged." *698 We conclude that the evidence in this case fairly establishes that Marion S. Jenks possessed testamentary capacity at the time of the execution of her will on August 2, 1965.
2. It would appear that contestant's principal claim of error is that the trial court held him to a higher burden of proof than that required by law in a will contest case. After making its findings (a) that the last will and testament of the testatrix was executed in the manner required by law, (b) that at the time of the execution she was of sound mind, (c) that the will was executed "freely and without any misrepresentation, concealment, duress or undue influence being exerted or practiced upon her either directly or indirectly," and (d) that none of the provisions of the will was influenced by "mistake, fraud or deceit," the trial court inserted a gratuitous finding, which was in fact a statement of law, to the effect that contestant "failed to sustain his burden of proof by clear and convincing evidence" that the testatrix lacked the necessary mental capacity to execute the contested will. It appears that this finding relating to the burden of proof was taken from dicta expressed in In re Estate of Jeruzal, 269 Minn. 183, 130 N.W.2d 473, with respect to the contestant's burden in an undue influence issue. On a subsequent motion of contestant, however, the trial court amended this part of its findings.
It has been held in numerous decisions of this court that the burden is on the proponent of the will to establish execution in accordance with statutory requirements and to show the testamentary capacity of the maker by prima facie evidence. The evidence and inferences therefrom must be viewed in the light most favorable to the findings of the court below. The burden of proof to establish mental competency rests upon the proponent of the will, and whether this burden has been successfully sustained by proponent is a question of fact. In re Estate of Rasmussen, 244 Minn. 215, 69 N.W.2d 630; In re Estate of Liberopulos, 245 Minn. 553, 73 N.W.2d 607; In re Estate of Healy, 243 Minn. 383, 68 N.W.2d 401; In re Estate of Enyart, 180 Minn. 256, 230 N.W. 781; Borstad v. Ulstad, 232 Minn. 365, 45 N.W.2d 828; In re Estate of Forsythe, 221 Minn. 303, 22 N.W.2d 19, 167 A.L.R. 1; Annotation, 76 A.L.R. 373; 20 Dunnell, Dig. (3 ed.) § 10209.
From an examination of the record, and particularly from an examination of the trial court's able memorandum, the objection stressed by contestant may be disposed of by observing that, even though the finding may have contained an inappropriate statement relative to the burden of proof, as applied to the context of this case, the objection is more related to semantics than substance. In the final analysis the trial court determined that the proponent had established a prima facie case and that the contestant had failed to meet his burden of presenting evidence which would convince the court that the prima facie case had been overcome. This appears from the memorandum incorporated in the order denying contestant's motion for a new trial. We are satisfied that the finding complained of has no bearing on the real question of whether the evidence supported the determination that the testatrix was competent. The entire record fully supports the trial judge's determination of that fact.
3. It is next contended by contestant that the trial court permitted opinion testimony with reference to the capacity of the decedent to make a will. This objection may be disposed of by noting that the trial court properly permitted testimony calling for an opinion bearing upon the testatrix' mental condition. We do not understand that the trial court permitted testimony as to mental capacity to execute a valid will. This point is controlled by our statement in In re Estate of Olson, 176 Minn. 360, 370, 223 N.W. 677, 681:
"* * * While in a will contest, the opinion of a witness, lay or scientific, should not be asked as to the testator's *699 capacity to make a valid will, there is certainly no objection to questions concerning his ability to comprehend his property and dispose of it understandingly."
See, also, 57 Am.Jur., Wills, § 128; In re Estate of Healy, supra; In re Will of Pinney, 27 Minn. 280, 6 N.W. 791, 7 N.W. 144.
Affirmed.