## *In re* BRADY'S ESTATE.

## APPEAL OF BRADY AND O'DONNELL.

1. WILLS—FRAUDULENT CONSPIRACY—EVIDENCE.
   Submission of issue of fraudulent conspiracy to jury was properly refused by trial court in will contest where no evidence thereof appears in the record.

2. SAME—UNDUE INFLUENCE—BURDEN OF PROOF.
   The burden of proof of claim of undue influence upon a testator rests upon contestant asserting it.

3. SAME—UNDUE INFLUENCE—DECLARATIONS OF TESTATOR.
   Declarations of testator to one of contestant's witnesses *held*, insufficient to warrant submission to jury of issue of undue influence having been exercised upon aged testator by legatees who bore no fiduciary relation to him.

4. SAME—UNDUE INFLUENCE—EVIDENCE—DECLARATIONS OF TESTATOR.
   The exercise of undue influence must be established by testimony wholly independent of statements or declarations of the testator although, when it is shown to have been exercised, its effect may be disclosed by the state of mind of the testator and that may be shown by his statements and declarations.

5. SAME—UNDUE INFLUENCE—BURDEN OF PROOF—OPPORTUNITY.
   Proof of opportunity alone for the exercise of undue influence does not sustain the burden of proof of one contesting a will.

6. SAME—MENTAL COMPETENCY—EVIDENCE—QUESTION FOR JURY.
   In contest of will of aged testator, evidence on issue of his mental capacity to make a will *held*, sufficient for submission of such issue to jury.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 17, 1940. (Docket No. 90, Calendar No. 41,328.) Decided December 10, 1940.

In the matter of the estate of Charles W. Brady, deceased. Clarence E. Knorpp presented for pro-

bate the will of Charles W. Brady, deceased. Objections filed for Helen Brady, a mentally incompetent person, by Frank E. Root, special guardian, and Dan J. O'Donnell. Contest certified to circuit court. Verdict and judgment for proponent. Contestants appeal. Affirmed.

*Schmalzriedt, Frye, Granse & Frye,* for proponent Knorpp.

*Alexander, McCaslin & Cholette (Robert E. Fox,* of counsel), for S. Thecla Quinn.

. *Pliny W. Marsh,* for Nellie Schoenberger. .

*John H. McPherson (M. M. Larmonth,* of counsel), for contestants.

CHANDLER, J. This is an appeal from a judgment of the trial court, allowing the will of Charles W. Brady, deceased, and from an order denying a new trial.

· At the time of his death on September 24, 1939, deceased was 79 years of age. His wife died in 1937, and thereafter, for a period of time, he lived with people by the name of Ryan who cared for his home. Later, he went to Farmington where he lived with a Mr. and Mrs. Schoenberger until the time of his death.

The appellant, Helen Brady, is a mentally incompetent daughter of a brother of deceased, and Dan J. O'Donnell, the other appellant, was named as a beneficiary in a previous will executed by deceased but whose name was omitted from the later instrument offered for probate.

. For a number of years, deceased had been very friendly with Clarence Knorpp, the proponent, and

his wife, Grace Knorpp, the mother of Mrs. Knorpp and deceased having been children together. Mr. Knorpp testified that on the 29th of August, 1939, deceased came to his home for dinner; that at that time deceased asked him if he would act as executor of his will, and, upon receiving a favorable reply, deceased withdrew from his pocket his previous will, executed February 15, 1938, and proceeded to make pencil alterations thereon in accordance with his then desire as to how his property should be distributed. Knorpp further testified that after he had been instructed as to how the will should be drawn, deceased requested that he arrange to have it typewritten and that on the following day he complied with the request by having the instrument typed by Mrs. Domkins, a stenographer who worked with him at his place of employment. On the evening of August 30, 1939, at about 7 o'clock, he and Mrs. Knorpp called for deceased in Farmington and drove him to the office of Mr. Deremo in Detroit to execute the will, deceased reading the document during the trip. Upon arriving at Mr. Deremo's office, Mrs. Knorpp remained in the car and deceased and Knorpp entered the office where the will was executed and witnessed by Deremo and Mr. Fisher who was also present when they arrived. According to Knorpp, he did not see the will again until it was handed to him by Mrs. Schoenberger on the morning that Mr. Brady died.

Messrs. Deremo and Fisher testified relative to the circumstances surrounding the execution of the will, Mr. Deremo's testimony also tending to prove that deceased was mentally competent at the time.

The principal testimony, adduced by contestants in support of their claims that the deceased was mentally incompetent and that the instrument offered had been executed as a result of a fraudulent

conspiracy and undue influence, was given by Ada Conway, who had known and been a friend of deceased for about 19 years. According to her testimony, deceased had told her on various occasions that the Schoenbergers and the Knorpps, particularly the latter, constantly kept after him relative to his will and bank account. He told her that he wished he could go away and it was suggested that he accompany her to California on a trip that she contemplated. This was agreeable with Mr. Conway and an extended trip was made. Much of Mrs. Conway's testimony was devoted to the physical and mental condition of deceased at that time and his actions during the trip. It is unnecessary to detail the various incidents, it being sufficient to note that the testimony given by this witness tended to prove that deceased was mentally incompetent. Relative to undue influence, she testified in part that on the evening following the execution of the proposed will,

"I drove up to Mr. Brady's with a truckload of flowers and he went along with me. I said, 'What do you want to see me about? I heard you were down to my house. Who was with you?' 'Grace Knorpp and Clarence Knorpp.' I said, 'What did they want?' He said, 'I will tell you the truth. They got me to sign a will.' I said, 'Do you know what was in the will?' He said, 'No. That girl just pestered me. Her husband doesn't know how she has pestered me.'"

There was evidence showing that Mrs. Knorpp called deceased affectionate names and frequently kissed him.

The trial court withdrew from consideration of the jury the questions of fraudulent conspiracy and undue influence, leaving only the question of mental competency for them to decide, which was resolved in favor of appellee.

The proposed will, in the character of bequests, is very similar to the will of February 15, 1938. In the former, one of the contestants, Dan J. O'Donnell, was to receive a bequest of $500. His name was omitted from the will in question, because, as Mr. Knorpp testified deceased told him, O'Donnell was indebted to deceased and had failed to pay his debt. Mrs. Knorpp was bequeathed $3,000 in the prior will, and a like amount in the second together with the residue after payment of other legacies. The estate was not large and, as appellee argues, it does not appear that the residuary bequest will be of importance.

As to the question of fraudulent conspiracy, it may be dismissed with the statement that no evidence thereof appears in the record. The trial court properly refused submission of the issue to the jury.

No confidential relationship existed between either Mr. or Mrs. Knorpp and testator, as is implied. The burden of proof rested with appellant to establish the claim of undue influence. *In re Leech's Estate,* 277 Mich. 299. Declarations of the testator, related by Mrs. Conway, were not evidence of undue influence sufficient to warrant submission of this question to the jury.

"The exercise of undue influence must be established by testimony wholly independent of statements or declarations of the testator. When undue influence is shown to have been exercised, its effect may be disclosed by the state of mind of the testator and such state of mind may be shown by his statements and declarations." *In re Allen's Estate,* 230 Mich. 584.

No evidence was presented that undue influence was exercised and, in view of the above rule, the declarations of the testator were of no bearing on the point. The most that can be said is that oppor-

tunity for the exercise of undue influence existed, but opportunity alone does not sustain the burden of proof. *In re Estate of Burwitz,* 272 Mich. 16.

The only question upon which there was proof proper to be submitted to the jury was that of mental capacity. The jury, on this point, found in favor of the appellee.

The judgment and order are affirmed, with costs to appellee.

Bushnell, C. J., and Sharpe, Boyles, North, McAllister, Wiest, and Butzel, JJ., concurred.