. SCHEIBNER *v.* SCHEIBNER.

1. ESTATES OF DECEDENTS—DEEDS — ACCOUNTING — FIDUCIARY RE-
   LATION—BURDEN OF PROOF.

   In a suit by one brother against another to set aside deeds
   from the mother to defendant and for an accounting of
   moneys belonging to the mother in her lifetime and not
   found in her estate, where it appears that defendant had
   charge of her financial affairs and stood in a fiduciary
   relation to her, the burden of proof rested upon him.

2. SAME—EVIDENCE—SUFFICIENCY.

   Defendant, by the testimony of disinterested witnesses,
   *held*, to have met the burden of proof so far as said deeds
   are concerned.

3. SAME—ACCOUNTING—PARTIES—EQUITY—JURISDICTION.

   Although it is primarily the duty of the executor of the
   mother's estate to reduce to his possession the personal
   property of the testatrix, where all of the parties, in-
   cluding the executor, are before the court, and dismissal
   of the bill without any reservation would bar any future
   action by him, equity will retain jurisdiction to require
   an accounting.

Appeal from Wayne; Mandell (Henry A.), J. Sub-
mitted June 9, 1922. (Docket No. 8.) Decided Oc-
tober 2, 1922.

Bill by Charles G. Scheibner against William F.
Scheibner and others to set aside certain deeds and
for an accounting. From a decree dismissing the bill,
plaintiff appeals. Affirmed in part, and remanded for
an accounting.

*Frank N. Renaud,* for plaintiff.

*William Henry Gallagher,* for defendants.

FELLOWS, C. J. Plaintiff and defendant William F. Scheibner are brothers. Their father, Ferdinand Scheibner, was for many years a resident of Detroit. Some time before his death he moved to Amherstburg, Canada, where he died in June, 1914, leaving a will which was before this court for construction in *Scheibner* v. *Scheibner*, 199 Mich. 630. We there held that the trust clause of the will was void. Among the property owned by Ferdinand Scheibner was an apartment house and annex in Detroit called the Central apartment. Upon the failure of the trust clause this property passed by the statute of descent to Charles and William and their mother, Louisa, each taking a third interest. It was a valuable property appraised by the Detroit real estate board at $140,000. On April 5, 1920, Louisa Scheibner conveyed her interest in the apartment house to her son, William F. Scheibner. She also executed a deed conveying to William the south 25 feet of a lot on Grand boulevard, and on the same day executed a will giving her sons the north 25 feet of the lot on Grand boulevard, and also giving them any other property she might have; defendant Frederick Christ was named as executor. Louisa Scheibner died February 6, 1921, and her will was admitted to probate and the executor duly qualified. This bill seeks to set aside the two deeds to William on the grounds of undue influence; it also seeks an accounting by William of moneys belonging to his mother in her lifetime and which were not found in her estate.

It is usual to find bitterness in this character of litigation but the bitterness between these two brothers far surpasses that usually found in litigation of this sort. It apparently originated in their boyhood days and has increased as the years have come and gone. The trial judge noted it in his opinion and in reach-

ing a conclusion in the main disregarded the testimony of both. We shall do the same.

We have read this voluminous record with care. We are satisfied from the facts that William stood in a fiduciary relation to his mother; that the burden of proof rested upon him in this case, and that he has by the testimony of disinterested witnesses met that burden so far as the deeds are concerned. There was no claim made in the bill that Mrs. Scheibner was mentally incompetent, no testimony was offered tending to show that she was in any way afflicted mentally. The witnesses who knew her best agree that she retained her mental vigor to the last, that she was a strong willed, self-assertive woman with a mind of her own. She does not appear to have been garrulous about her private affairs or her children, but the strong preponderating evidence is that when she did speak of them she expressed a preference for William, had greater affection for him, and we are satisfied that the deeds were executed to carry out her deliberate judgment as to what she wanted to do and what she determined she ought to do unaided and uninfluenced by any one. This record is convincing to us that Mrs. Scheibner was not a person who would be susceptible to influence, due or undue, exerted by her son or anyone else. We shall not detail the testimony. It would not benefit the parties or the profession so to do. The decree in so far as it sustains the validity of the deeds is affirmed.

William was named as one of the executors in his father's will. He had the active charge of the Detroit property, of the Michigan estate. The Central apartments and annex were at all times during the settlement of the estate revenue producers. William's annual accounts and final account as executor were offered in evidence in the court below but they do not appear in detail in the record; it seems to be con-

ceded that they show he was credited with payments to Mrs. Scheibner pending the settlement of the estate aggregating $23,387.85. Defendant's testimony tended to establish that Mrs. Scheibner had $1,000 in the bank when her husband died; the testimony also shows that she borrowed $2,000 and gave a mortgage on property owned by her in November, 1917, and that $800 was used to pay off a prior mortgage but the other $1,200 is not accounted for. The record also discloses that she carried bank accounts and paid her bills by checks which were drawn by William and signed by her, she being unable to read English, and William being at her Amherstburg home several times a week. It will be seen that if William paid her the sums he was credited with paying, she had from him, from the proceeds of the mortgage, and the money in bank when her husband died, upwards of $25,000 in 6 years. When she died she had less than $25. The testimony of all the witnesses is that she lived a very frugal life, spent little or nothing for clothes; her household during a considerable time consisted of herself and her niece whom she paid $2.50 per week. Her wants were few and the record discloses that on several occasions she was without means. We are not convinced by the evidence in this record that she spent upward of $25,000 in 6 years. We do not determine one way or the other the question. She may have done so but the record does not show it. William was the executor and had charge of the collection of the rents from the apartment house; all money she received came from him; he had charge of all her financial affairs, substantially all the money she paid out was on checks drawn by him. Under these circumstances his relations with his mother were fiduciary—the burden was upon him to account for his trust. It is not a sufficient answer to this claim to say that when William sought to ex-

plain by testifying to facts equally within the knowledge of the deceased, an objection was interposed that the statute inhibited such testimony. Manifestly the rules as to the admission of testimony must be observed in this inquiry as in all others.

During the hearing in the court below the point was made by defendants' counsel that the executor was the proper party to make claim for any money which belonged to Mrs. Scheibner in her lifetime and that the action, if any, should be at law. Primarily it is the duty of the executor to reduce to his possession the personal property of the testatrix but he is a party to this case and the dismissal of the bill without any reservation, as was the decree in the court below, would doubtless bar any future action by him. The question in issue being the accounting by a trustee, equity has jurisdiction. All of the parties including the executor are before the court; plaintiff is interested in such accounting because he will be entitled to one-half of any sum found due, if any sum is found due. He is the only party besides William having an ultimate interest in the question. We think jurisdiction should be retained in order to settle all the matters before the court. The bill in so far as it seeks an accounting should not be dismissed upon this record.

The decree in so far as it sustains the deeds will be affirmed and the case remanded to hear such further testimony on the accounting as may be proper, the same to be heard either by the circuit judge or a commissioner on reference as the circuit judge may desire. Costs will abide the final outcome.

WIEST, MCDONALD, BIRD, and SHARPE, JJ., concurred. CLARK, MOORE, and STEERE, JJ., did not sit.