336 Mich. 657 (1953)
59 N.W.2d 38
In re KENEALY'S ESTATE.
GOODELL
v.
IVORY.
Docket No. 12, Calendar No. 45,688.
Supreme Court of Michigan.
Decided June 8, 1953.
*659 Dorothy E. Broeder, for proponent.
Frederick Goodell, in pro. per.
BUTZEL, J.
On May 16, 1949, the late John Kenealy, of Detroit, who died on June 29, 1949, executed a will, which was witnessed by Violet Garcia and Joseph A. Carter. The attestation clause stated that the testator declared the instrument to be his last will and testament in the presence of the witnesses, and that at his request and in his presence and in the presence of each other they subscribed their names as witnesses. The testator directed, in the will, that his real estate be converted into cash. He bequeathed the sum of $300 to the pastor of his church for the purpose of having masses said for the repose of his soul; the sum of $200 to his nephew George Goodell; $100 to his nephew Fred Goodell; $500 to the Sister Servants of the Immaculate Heart of Mary of Monroe, Michigan; $750 to Caroline M. Doran; $500 to Charles G. Doran; $500 to Edward Doran; $500 to John T. Doran; $300 to the Little Sisters of the Poor; $500 to Margaret Mythen; and small amounts to others. With the exception of 1 item to be selected by a third party, all the household goods and personal effects were left to Caroline M. Doran and Margaret Mythen. The residue and remainder of the estate was devised and bequeathed to Caroline M. Doran. The record does not show the size of the estate except in the petition for probate, wherein the personal effects are set forth as being of the value of $3,000 or thereabouts, and the *660 real estate at $10,000 or thereabouts. Anna Mae Ivory, an attorney, is named as sole "executor." Her maiden name was Doran and she is a niece of Caroline M. Doran. Testator's wife (the late Mrs. Kenealy) was also a Doran. While the exact relationship between Caroline Doran and the late Mrs. Kenealy is not definitely shown, they appear to have been Cousins. Mrs. Ivory drew the will and signed the petition for probate. Frederick Goodell, a nephew, who resides in Grosse Pointe Park, Michigan, filed objections and the probate judge certified the cause to the circuit court for the county of Wayne. The case was tried by the court without a jury.
Mrs. Ivory testified that she was called to the home of the testator by Caroline Doran; that she interviewed the testator on 2 different occasions before she again returned to his home with the formally drafted will, and it then was duly executed. She testified that at the second interview, when she went over the terms of the will with testator, he directed that some changes be made; that she went over the will paragraph by paragraph in its final form with testator; and that she called in the witnesses who lived nearby. The will is in proper form. Joseph A. Carter, one of the witnesses to the will, became mentally and physically ill, as shown by a doctor's testimony, and could not be called at the hearing. However, it was shown that Mr. Carter's illness began subsequent to the execution of the will. Subsequent incompetency of a witness to a will does not prevent its probate and allowance, if it be otherwise satisfactorily proved. CL 1948, § 702.5 (Stat Ann 1943 Rev § 27.3178[75]). Mrs. Garcia testified to the execution of the will and, notwithstanding Mrs. Ivory's testimony to the contrary, stated that it was Mrs. Ivory and not testator who asked the witnesses to sign. She did say, though, that testator was *661 present when Mrs. Ivory told the witnesses that the instrument was testator's last will and testament and asked the witnesses to sign. Even if the request comes from another person it is sufficient if there is acquiesence by the testator. In re Cosgrove's Estate, 290 Mich 258 (125 ALR 410). Upon cross-examination Mrs. Garcia testified that in her opinion testator was mentally incompetent at the time the will was executed, and based her opinion upon the claim that more than once he threw a package containing excrement, wrapped in paper, out of the window. The trial court stated in its opinion that it was thrown into the alley, but the testimony shows it was thrown into a yard. Upon further examination Mrs. Garcia ascribed as a further reason for her belief that the testator was incompetent to make a will was because he had failed to make any bequest to her young son, of whom testator had been extremely fond. The judge expressly stated that her testimony as to incompetency because of failure to remember her son was of no value. He also stated that acts of untidiness do not prove lack of testamentary capacity. See In re Littlejohn's Estate, 239 Mich 630. On the question of competency contestant offered testimony to show that testator was over 89 years of age; that his health and memory were failing; and that the death of his wife on April 27, 1949, only 18 days prior to the execution of the will, had further impaired his faculties. On the day of his wife's funeral there was a family consultation, at which it was decided that testator should continue to live in his home and that Caroline Doran, also referred to as Carrie Doran, the principal beneficiary, should assist him. There is evidence tending to show that testator was slovenly in his habits; that he had lapses of memory; that he had difficulty in remembering the correct names of people; and that he did not at first understand the full import *662 of consenting to the assignment of a tenant's lease, and that he gave his consent after Miss Doran told him to do so. It was shown, however, that the witness who testified as to his lack of testamentary capacity accepted his signature to the consent of assignment and, also, on a rent receipt. It may be that at the time of making the will, age had caused some physical and mental impairment, but the judge evidently believed it was insufficient to affect his mental capacity to make a will. It was shown also that at his wife's funeral testator did not act coherently. He and his wife had lived happily for 65 years together and it was not unnatural for him to be temporarily overcome with grief. The judge was not impressed with other minor incidents, and we see no reason to set them forth in detail. The burden of proof rests at all times on the contestant to show by competent evidence that at the time of the execution of the will testator was mentally incompetent or under undue influence to make the will. In re Johnson's Estate, 308 Mich 366. The trial judge held that the contestant did not sustain such burden of proof and we are in accord with his ruling, notwithstanding minor incidents that would show that the testator was not as bright as he had been in earlier years. He had been successful in the plumbing business, from which he retired some 40 years prior to his death. He and his wife lived a happy life together with the closest companionship and he undoubtedly was very much affected by her death, which left him without any near relatives in a direct line except contestant Frederick Goodell, the latter's brother George Goodell and their sister, Miss Alice Goodell, testator's nephews and niece. Miss Goodell's name was not mentioned in either the will or the petition to probate. The testimony shows that she had had behavioristic tendencies practically all her life; that at times she became unmanageable, *663 but nevertheless had been a favorite of testator, who was always able to calm her. At one time testator had made a futile attempt to have her committed to "Lapeer."[*] Subsequently she was committed to a State mental institution. In the oral argument Mr. Goodell, contestant, stated that she was committed in 1944 as a public charge. George T. Goodell testified that testator formerly asked about her frequently but that in later years he seemed to have forgotten about her. Under the circumstances, his failure to mention her in the will cannot be ascribed to a lack of memory of those who might, because of relationship, be remembered as beneficiaries. Contestant further claims that the failure of testator, a a very religious person, to leave more money to the church, particularly for masses for the repose of his wife's soul, indicates a lack of testamentary capacity. The judge paid no attention to this claim and we believe that it requires no comment.
It is further claimed, however, that Caroline Doran exercised undue influence on testator. It was shown that contestant and his brother only saw testator at long intervals. Their relationship was not a close one and far from intimate. It is true that Caroline Doran had the opportunity to influence testator, but opportunity alone is not sufficient. Miss Doran lived 7 or 8 blocks from his home. She was related to testator's wife, whose maiden name also was Caroline Doran. Mrs. Ivory testified in answer to a question that at the time the will was drafted, the testator said that Caroline "was his first thought as to a person to be remembered," also, "that he didn't know what he would have done without her; she had taken care of both he and his wife off and on, helped him out a good many years, and since his wife had died she had been in constant attendance *664 upon him and helped him;" also that she "had been down there every day and helped him," that she did not live in the same house with him. Caroline Doran was also present when the will was executed. It was claimed that she immediately took possession of testator's property after his death, even attempting to exclude contestant, who was appointed special administrator. As she was the residuary legatee under the will, it would be natural for her to protect the property. There are many other details, but it would serve no useful purpose to discuss each and every one of them. Suffice it to say that the burden of proof was on the contestant. The trial judge found that the contestant did not sustain the burden of proof and overcome the presumption that the testator was mentally competent to make the will, and that the testator showed his appreciation of Carrie Doran's services. After careful consideration of the testimony and the opinion of the trial court in upholding the will, we hold that the evidence did not preponderate in the opposite direction.
Complaint is made that the judge did not answer the many questions raised in a motion for a new trial, but he denied it for the reasons stated in his main opinion. While an opinion on a motion for a new trial is desirable and better practice, there is no rule compelling one. The judge gave his reasons in his first opinion and that is sufficient.
The judgment is affirmed, with costs in this Court. The cause is remanded to the circuit court with directions to certify it to the probate court for the county of Wayne for further proceedings in accordance with this opinion.
DETHMERS, C.J., and ADAMS, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.
NOTES
[*] Lapeer State Home and Training School for care of imbeciles and feeble-minded and to improve their condition.