## SALVNER *v.* SALVNER.

1. DESCENT AND DISTRIBUTION—WIDOWERS.
   A widower's children are the natural recipients of his bounty.

2. DEEDS—UNDUE INFLUENCE—WIDOWER—REMARRIAGE.
   Undue influence, in order to defeat a widower's agreements with his children whereby he conveyed property to them prior to and after his remarriage, must amount to force or coercion too great for him to resist and must deprive him of his free agency.

3. SAME—UNDUE INFLUENCE—PRESUMPTIONS—PERSUASION—WIDOWER—REMARRIAGE.
   Undue influence, to defeat a widower's conveyances of property to his children prior to and after his remarriage, cannot be

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur, Descent and Distribution § 38.
[2] 16 Am Jur, Deeds § 38.
[3] 16 Am Jur, Deeds §§ 38, 393.
[4] 16 Am Jur, Deeds § 39.
[5, 6, 8] 16 Am Jur, Deeds §§ 38, 39.
[7] 23 Am Jur, Fraud and Deceit § 14.

presumed and advice, argument or persuasion will not vitiate such conveyances, even though they might not have been made but for such advice, argument or persuasion.

**4.** SAME—UNDUE INFLUENCE—OPPORTUNITY.

Undue influence, to defeat a widower's conveyances of property to his children prior to and shortly after his remarriage, may not be proved merely by a showing that the children had ample opportunity to exercise it.

**5.** SAME—UNDUE INFLUENCE—EVIDENCE—FIDUCIARY.

Evidence presented in suit by father to have conveyances of real property and transfers of stock to his children, made shortly before and after his remarriage, *held*, insufficient to establish that undue influence had been exercised upon such plaintiff who was approximately 70 years of age, diabetic, had lost one leg by amputation and was not in good health but was mentally alert and considered himself capable of managing his own affairs, and proofs do not support his claim that a fiduciary relation existed between him and the children.

**6.** SAME—UNDUE INFLUENCE—EVIDENCE—CHILDREN OF WIDOWER—REMARRIAGE.

The influence that prompted defendant children to act on behalf of their father, plaintiff in suit against them, to make property transfers to them prior to and after his remarriage *held*, not undue influence, where it appears that when the conveyances were made he was approximately 70 years of age, diabetic, had had 1 leg amputated, was not in good health and 1 of the daughters and her husband had cared for him in the home.

**7.** WORDS AND PHRASES—FIDUCIARY.

The term "fiduciary" implies a relationship existing only when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another.

**8.** DEEDS—UNDUE INFLUENCE—COERCION—WIDOWER—EVIDENCE—REMARRIAGE.

Plaintiff *held*, not to be the victim of undue influence or persuasion or coercion of defendants, his adult children, to whom he conveyed property shortly before and after his remarriage, where it appears he was then approximately 70 years of age, diabetic, had had 1 leg amputated and was not in good health, the instruments of conveyance were drawn by an attorney who had been his attorney for many years and witnessed by a longtime business associate and the defendants' remonstrances to him were prompted by the inadvisability of the second marriage rather than to obtain his property,

Appeal from Saginaw; O'Neill (James E.), J. Submitted June 13, 1957. (Docket No. 42, Calendar No. 47,216.) Decided September 4, 1957.

Bill by Martin A. Salvner against Arnold J. Salvner, Irma F. Hicks, Thusnelda M. Hinz and John L. Salvner to set aside various transfers of real and personal property on basis of undue influence. Bill dismissed. Plaintiff appeals. Affirmed.

*Raphael G. Phillips* and *John M. Patterson,* for plaintiff.

*Weadock & Montgomery (Jerome . Weadock,* of counsel), for defendant.

CARR, J. Plaintiff instituted this suit in equity asking that certain transfers of property made by him to his children, the defendants Arnold J. Salvner, Irma F. Hicks and Thusnelda M. Hinz, be set aside and reconveyances decreed. The basis for the relief sought was alleged undue influence exerted against plaintiff by defendants. The bill of complaint averred improper conduct on the part of plaintiff's children, consisting principally of statements made to him and the failure to exercise a proper consideration for his welfare. John L. Salvner, named as a defendant, is a brother of plaintiff, but apparently he was not served with process and did not enter an appearance. The answer filed by the son and daughters of plaintiff denied that they had in any way mistreated him, or that he had been induced to make the transfers of property in question by any improper conduct on their part.

On the trial of the case proofs were offered by the parties in support of the claims set forth in their respective pleadings. The trial judge, after listening to the witnesses and the arguments of counsel,

concluded that plaintiff had not established that he was entitled to the relief sought. A decree was entered accordingly dismissing the cause, and plaintiff has appealed. In substance, it is claimed in his behalf that the record justifies the conclusion that plaintiff's will was overcome by the acts and statements of his children, and that the property transfers involved were not the result of his voluntary action.

For many years prior to the occurrence of the events of material importance in this case plaintiff was a successful businessman in the city of Saginaw. He was an accountant and had been associated with the Home Dairy Company, serving on the board of directors of said corporation for an extended period. Prior to December 1, 1951, he was president of the company, from which office he retired on the date mentioned but continued as a director for the first part of the next ensuing year. His first wife passed away in 1948.

In 1951, after some correspondence between the parties, he assisted Mrs. Theresa Haase, who had previously lived in Saginaw with her husband for some time before returning to Germany in 1931, and who was at that time acquainted with plaintiff and his first wife, to enter this country. Mrs. Haase came to the home in Saginaw occupied by plaintiff and his daughter Thusnelda and her husband. The record indicates that she arrived on November 14, 1951. It is undisputed that she and plaintiff contemplated marriage, and that the defendants were aware of that fact. At the time plaintiff, who was approximately 70 years of age, was suffering from diabetes, had lost one leg by amputation, inferentially as a result of the disease, and was not in good health physically. However, the proofs justify the conclusion that he was mentally alert, that he considered himself capable of managing his own af-

fairs, and that he was not at the time easily swayed by the opinions of others.

Plaintiff's children undertook to dissuade him from marrying Mrs. Haase, and also sought to convince the latter that because of their father's physical condition the marriage was not advisable. Such efforts were unavailing, and the marriage occurred on March 22, 1952. During the period from the time of her arrival until the date of said marriage Mrs. Haase remained in the home of plaintiff and his daughter. It further appears that when defendants recognized that their arguments against the marriage were unavailing they assisted in the making of the preparations.

Prior to the marriage, and under date of January 9, 1952, plaintiff entered into an agreement with his children, reciting the relationship between the parties and his desire to make a distribution of a portion of his property. Said agreement was prepared by plaintiff's attorney who had acted as such for many years, and who also was the attorney for the Home Dairy Company. It provided that plaintiff should place the home that he occupied in the names of himself and his daughter Thusnelda as joint tenants with right of survivorship, that he would execute an assignment of 2,946 shares of common stock of the Home Dairy Company in such form as to make himself and his daughter Irma joint owners thereof, and that he would make a similar assignment of stock for the benefit of his son Arnold. The latter agreements were subject to the condition that all dividends received should be paid to plaintiff during his lifetime. Apparently this agreement was carried out, and it further appears that by conveyance dated March 19, 1952, plaintiff transferred his interest in the said home to Thusnelda, thus vesting complete title in her.

On February 23, 1952, plaintiff and Mrs. Haase entered into an antenuptial agreement in which specific reference was made to the action taken by plaintiff and his children on January 9th preceding. Reference was also made to certain insurance that plaintiff was carrying, and to the rights of a widow in the property of her deceased husband under the Michigan statutes. The undertaking contained a recital that Mrs. Haase appreciated that property acquired by plaintiff in his lifetime should go to the children. Plaintiff further agreed that he would, by will or otherwise, make provision that on his death Mrs. Haase, if the marriage took place, should receive the sum of $5,000, and a provision was also incorporated referring to transfers of other property to her. This agreement was prepared by plaintiff's attorney, and was explained to Mrs. Haase in the German language by one of the witnesses to the instrument.

Following the marriage of plaintiff and Mrs. Haase they purchased a home on Court street in Saginaw and moved thereto, leaving the daughter Thusnelda in possession of the property that had been conveyed to her by plaintiff. Relations between the parties continued on an amicable basis. Apparently some discussions were had with reference to property matters, involving the expediency of a modification of the agreement of January 9, 1952. Such discussions led to the execution of a further undertaking on July 21, 1953, prepared by plaintiff's attorney, in which specific reference was made to the first agreement and to the conveyance of real estate to the daughter Thusnelda. The latter, and likewise her brother and sister, consented that the beneficiaries under certain life insurance policies might be changed so that the proceeds thereof should be payable to the estate of plaintiff. It was further recited that the father had executed a will with the

terms and conditions of which the parties were inferentially familiar. Plaintiff further undertook to transfer to Irma and to Arnold his interest in the Home Dairy Company stock, as to which a joint ownership had previously existed. It was provided in this connection that all of said stock should be delivered to John L. Salvner, plaintiff's brother, to hold as trustee, and that all dividends should be paid to plaintiff during his lifetime. Provision for a successor trustee in the event of the death or incapacity of John L. Salvner to act was made, but such provision is not material to any issue in this case.

The agreement as to the stock was carried out. By said will plaintiff devised to Theresa E. Salvner the property on Court street, gave to her the sum of $18,-000 payable out of the proceeds of life insurance policies, dividends due on such policies, and bonds and money that might be possessed, or deposited in banks, at the time of the death of the testator. The instrument further directed that, after the payment of specific bequests to third parties, any property remaining was to be divided in equal shares among Theresa E. Salvner and the 3 children.

Following demands for the return of the property transferred by him to his son and daughters, and defendants' refusal to comply, the present suit was instituted on July 2, 1954. In terms the bill of complaint filed asked that the agreement of January 9, 1952, the antenuptial settlement, and the undertaking of the parties dated July 21, 1953, be declared null and void on the ground that their execution was brought about by undue influence exerted against plaintiff by defendants. More specifically, a reconveyance of the stock in the Home Dairy Company was sought from defendants Arnold and Irma, with like relief with reference to the real estate conveyed to defendant Thusnelda. While, as it is claimed, the antenuptial agreement may tend to throw light on

the relations of the parties, it does not appear that it is actually involved in the present controversy, to which plaintiff's wife is not a party. As before noted, the trial judge denied relief on the ground that the plaintiff had not established his right thereto by satisfactory proofs.

It is apparent that the relations between plaintiff and his children were quite friendly, and that no differences arose except with reference to the second marriage. Said defendants were natural recipients of plaintiff's bounty. In *In re Reed's Estate,* 273 Mich 334, which was a will contest involving a claim of undue influence, this Court approved a charge to the jury stating, in substance, among other matters covered (pp 344, 345):

"Undue influence, in order to defeat a will, must amount to force or coercion, and any influence short of this would not be undue influence; undue influence cannot be presumed; a will may not be set aside for undue influence unless such influence amounted to constraint too great for the testator to resist, depriving him of free agency; neither advice, nor argument, nor persuasion will vitiate a will freely made, even though the will might not have been made but for such advice or persuasion; persuasion and appeals to the affection, ties of kindred, sentiments of gratitude, or pity for future destitution do not constitute undue influence; no presumption of undue influence arises from the fact that testator gave his property elsewhere than to his brother and sister; the fact that the person alleged to have used undue influence had ample opportunity therefor is no evidence such opportunity was exercised."

The Court further quoted with approval from *In re Curtis' Estate,* 197 Mich 473, 477, where it was declared:

" 'The influence to vitiate this will must have been such as to amount to force and coercion, destroy-

ing his free agency and there must be proof that the will was obtained by this coercion.' "

By analogy like principles must obtain in the case at bar in determining whether plaintiff is entitled to the relief sought by him. The transfers here involved were not unnatural in character. They were not made to strangers having no claims on the donor. It is significant, as bearing on the relations of the parties, that for a period of approximately 10 years preceding the conveyance of the real estate to the daughter Thusnelda she and her husband had lived in the home with plaintiff, the expenses of said home being borne principally by him. It is significant also that the written agreements between the parties were prepared by plaintiff's attorney, a friend and business associate over many years. Said attorney was present at the execution of the agreement of January 9, 1952, and, also, at the signing of the antenuptial contract. Acting as a witness to the transactions was another officer of the Home Dairy Company, likewise plaintiff's friend and business associate. It is fair to assume that neither of these men would have been a party to any transaction entered into by plaintiff had they had any reason to believe that coercion or undue influence had been exerted against him.

The case of *In re Reed's Estate, supra,* was cited, quoted from, and followed in *In re Kramer's Estate,* 324 Mich 626, 635, 636. See, also, *In re Kenealy's Estate,* 336 Mich 657. A gift from a parent to a child, particularly under the circumstances disclosed by the case at bar, raises no inference or presumption of undue influence. Rather, the burden rests on one asserting invalidity to establish it by satisfactory proof. 39 Am Jur, Parent and Child, § 99, p 744.

On behalf of appellant it is contended that a fiduciary relation existed as between him and the de-

fendants. The proofs do not support the claim. The daughter Thusnelda, and likewise the son, unquestionably did many things to assist their father, a perfectly natural course of conduct in view of his physical condition. However, the record falls far short of establishing that plaintiff was governed by their advice or that he depended on them in the making of decisions concerning his business affairs, or otherwise. It clearly appears that plaintiff, notwithstanding his physical condition, was able to determine for himself what he wished to do and to refuse to act against his own inclinations. What defendants did to assist him amounted to no more than would be prompted normally by the existing relationship.

Quite possibly the kindly feelings that prompted the acts of the son and daughters on behalf of their father tended to influence him in making the property transfers now under attack. Such an influence is not undue. What was said in *In re Jennings' Estate,* 335 Mich 241, 243, 244, is applicable here:

"It is urged that because defendant for a number of years looked after testator's business and property, collecting rents, dividends and mortgage payments for him, and paying taxes, repair bills, et cetera, a fiduciary relationship existed between them, giving rise to a presumption of undue influence on defendant's part. We are mindful of the holdings in *In re McMaster's Estate,* 163 Mich 210; and *Scheibner* v. *Scheibner,* 220 Mich 115; and others of like import, which plaintiffs cite as authority for their claim of a fiduciary relationship here. At the same time, it is to be noted that in *In re Cottrell's Estate,* 235 Mich 627; and *In re Lacroix's Estate,* 265 Mich 59, it was held that the mere assisting with and conducting of testator's business affairs does not give rise to a fiduciary relationship. We think the term should be held to mean what the word 'fiduciary' implies and that the relationship exists only when there

is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another. No such situation was established here."

In *Mackall* v. *Mackall,* 135 US 167, 173 (10 S Ct 705, 34 L ed 84), the court in rejecting a claim that a deed had been executed because of undue influence exerted by the grantee thereunder, a son of the grantor, emphasized the nature of the relation, declaring that:

"To defeat a conveyance under those circumstances, something more than the natural influence springing from such relationship must be shown; imposition, fraud, importunity, duress, or something of that nature, must appear; otherwise that disposition of property which accords with the natural inclinations of the human heart must be sustained. So that if this case turned simply upon the question of undue influence, compelling a voluntary conveyance, it would be difficult to find enough in the testimony to overthrow this deed."

In *Spencer* v. *Hill,* 336 Mich 22, the only testimony offered in the case was that of the plaintiff who sought relief by way of cancellation of instruments that she had executed. Under the undisputed facts a decree in her favor was sustained, the Court recognizing, however, that each such case must depend on its own circumstances. The facts there involved are clearly distinguishable from those in the case at bar.

That the defendants sought to dissuade their father from marrying Mrs. Haase is not in dispute. It was their claim on the trial that their position was prompted by a desire to prevent an act on his part that, in view of his physical condition, they considered, in good faith, to be unwise. Their statements to plaintiff, of which complaint is now made, had reference to his contemplated marriage rather

than to his property. Plaintiff as a witness in his own behalf testified that:

"There were never any discussions with the children concerning who would receive my property after I was married."

It is significant also that defendants' attempts to dissuade plaintiff from entering into a marriage with Mrs. Haase resulted in failure. In that respect he made his own determination uninfluenced by what was said to him. He relied on his own judgment. The presumption that he did likewise in transferring certain property to his children is supported by the proofs in the case, rather than being inconsistent therewith. Considering all of the circumstances under which the transactions in question took place, the opportunity for deliberation with reference to them, the fact that plaintiff's attorney prepared each agreement unquestionably in accordance with his understanding as to plaintiff's desires, and the further fact that plaintiff, had he desired to do so, had ample opportunity to discuss his affairs with his business associates as well as with his attorney, indicate that he was not coerced or made the victim of undue influence or persuasion by defendants.

The trial judge came to the correct conclusion, and the decree entered is affirmed. Appellees may have costs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and BLACK, JJ., concurred.