353 Mich. 83 (1958)
90 N.W.2d 837
In re FAY ESTATE.
FAY
v.
KOHN.
Docket No. 29, Calendar No. 47,321.
Supreme Court of Michigan.
Decided June 12, 1958.
Baker, Hammond & Baker, for proponents.
Yale Leland Kerby (Raymond Stanley Metzger, Jr., of counsel), for contestant.
*86 CARR, J.
This case involves the question whether an instrument purporting to be the last will and testament of Charles Fay, a resident of Lenawee county at the time of his death, is entitled to probate. Said instrument was executed on July 26, 1955. Mr. Fay was at the time 75 years of age, and actively engaged in conducting his business affairs. He so continued until a short time before his death, which occurred April 15, 1956.
The will was prepared by an attorney, C. Ralph Kohn, of Morenci, Michigan, who had been Mr. Fay's legal advisor for approximately 2 years. Provision was made for the payment of certain obligations and for the creating of a trust embracing all remaining assets of the estate, with payments therefrom, during their lifetime, to 2 named beneficiaries. On the death of the survivor of said beneficiaries or on the lapse of 20 years, whichever should be later in time, 1/2 of the principal and undistributed income remaining in the trust was directed to be paid to a suitable charitable organization, to be used for the erection and maintenance of a home, in the Morenci area, for aged people. The balance of the trust fund was bequeathed to Mr. Fay's 2 sisters, a brother (the contestant herein), and the heirs of a deceased brother, one nephew being excepted from the class of beneficiaries created by the will. The attorney who prepared the will was designated as trustee thereunder, and he and Ralph Moine were nominated as coexecutors.
Following the death of Charles Fay the will was offered for probate by the executors named therein. Objections were filed by testator's brother, Mark D. Fay, and the contest was certified to the circuit court for determination. On behalf of contestant it was claimed that the instrument was not entitled to probate because not executed in accordance with statutory requirements, that undue influence was exerted *87 against the testator, and that on the 26th of July, 1955, he lacked mental capacity to make a valid will. On the pretrial hearing counsel for contestant claimed that the witnesses to the will (C. Ralph Kohn and his wife, Lorraine Kohn) were not competent witnesses for the reason that Mr. Kohn, as trustee and as executor, was a beneficiary under the will, that his interest was such as to disqualify him as a witness, and that Mrs. Kohn was also disqualified. This objection was submitted to the circuit judge on motion and arguments of counsel, the parties recognizing that the question should be determined in advance of trial.
In disposing of the matter the court concluded that under the common law a person receiving a direct pecuniary interest under a will was incompetent to witness it, but that the statutes of this State have changed the rule with reference to the right to testify in a judicial proceeding notwithstanding an interest in the subject matter, that, likewise by statute, beneficial devises, legacies and gifts to a subscribing witness are void unless there are 2 other competent witnesses to the will, and that avoiding the beneficial interest, if such existed, renders the witness competent. Contestant's motion was, in consequence, held to be without merit, and an order was entered setting the case for trial. The circuit judge further pointed out in his opinion that it was unnecessary to determine whether Mr. and Mrs. Kohn, or either, did receive a beneficial interest under the will.
On the trial of the case before a jury counsel for contestant renewed the objection based on the alleged incompetency of the witnesses to the will, also claiming that a presumption of undue influence arose because of the relationship between the testator and his attorney, that such presumption was not met by proof, and that the testator at the time he executed the will lacked sufficient mental capacity to do so. *88 Following the introduction of proof counsel for proponents moved for a directed verdict in their favor, sustaining the validity of the will and the right to have it probated. The motion was granted. From the judgment entered on the verdict an appeal has been taken. Contestant having died during the pendency of the litigation, his estate is represented in this Court by the administratrix.
On behalf of appellant it is contended that the trial court was in error in holding that the witnesses to the will were competent to act in that capacity. Our attention is called to decisions from other States under statutes at variance with those of Michigan, based on specific provisions of said statutes or on recognition of the common-law rule. The practical situation suggested is discussed in 94 CJS, Wills, § 185, pp 998, 999, where it is said:
"By the common law, interest rendered a person incompetent as a witness to a will, and such is the rule except where it has been abrogated or modified by statute; and the rule is particularly applicable in those jurisdictions in which it has been incorporated into statute. A witness, incompetent by reason of interest, it has been said, is not `credible.'
"On the other hand, by statute in some jurisdictions, incompetency by reason of interest has been abolished as to all classes of interested witnesses, or the effect of the statutes is to render subscribing witnesses to a will competent irrespective of any `interest in the event' which might disqualify such witness in another type of proceeding. Where this is true, a creditor of the testator has been held competent to act as subscribing witness; and in many jurisdictions, as appears infra subdivision c of this section, statutes avoid a bequest or devise to a witness and render him a competent witness. * * *
"In accordance with the principles considered supra subdivisions a and b of this section, it has very generally, but not universally, been held, in the absence *89 of statute providing otherwise, that devisees or legatees, because of their interest, are incompetent to act as witnesses to wills and that a will attested by legatees or devisees is void unless, excluding them as witnesses, there are a sufficient number of competent witnesses to satisfy the statutory requirements. This situation, however, was remedied by the English parliament by the enactment of legislation which rendered void devises or legacies to witnesses to wills and made them competent subscribing witnesses, thus avoiding the sacrifice of the will except as to the devises or legacies to the witnesses. Accordingly, in many States a witness to a will who is also a devisee or legatee is now a competent subscribing witness to a will, although prevented from taking any benefit thereunder, either by reason of the adoption of the English statutes as a part of the common law of the State or the enactment of statutes of a similar import; and such is now also the rule in the Philippines by virtue of express statutory provision."
The rule of the common law pertaining to the disqualification of a witness because of an interest in the subject matter has been substantially modified in this State by statute. CL 1948, § 617.63 (Stat Ann § 27.912) reads as follows:
"No person shall be excluded from giving evidence in any matter, civil or criminal, by reason of crime or for any interest of such person in the matter, suit, or proceeding in question, or in the event of such matter, suit or proceeding, in which such testimony may be offered, or by reason of marital or other relationship to any party thereto; but such interest, relationship, or conviction of crime, may be shown for the purpose of drawing in question the credibility of such witness, except as is hereinafter provided."
Citing the statutory provision quoted, it was said in In re Ferguson's Estate, 295 Mich 576, 579, that:
*90 "The common-law exclusion of a witness on account of interest is abrogated by statute in this jurisdiction."
Such declaration is in accord with decisions from other States cited in CJS in support of the conclusions set forth in the summarization above quoted.
It is apparently the position of counsel for appellant that in the instant case Mr. and Mrs. Kohn were not competent witnesses to the will within the meaning of CL 1948, § 702.5 (Stat Ann 1943 Rev § 27.3178[75]), which reads as follows:
"No will made within this State, except such nuncupative wills as are mentioned in the following section, shall be effectual to pass any estate, whether real or personal, nor to charge or in any way affect the same, unless it be in writing and signed by the testator or by some person in his presence, and by his express direction, and attested and subscribed in the presence of the testator by 2 or more competent witnesses; and if the witnesses are competent at the time of attesting the execution of the will, their subsequent incompetency, from whatever cause it may arise, shall not prevent the probate and allowance of the will, if it be otherwise satisfactorily proved."
Said section must be read in the light of the provision of the statute, above quoted, rendering witnesses competent to testify, notwithstanding an interest in the subject matter, and, also, in conjunction with CL 1948, § 702.7 (Stat Ann 1943 Rev § 27.3178 [77]), which reads as follows:
"All beneficial devises, legacies and gifts whatsoever, made or given in any will to a subscribing witness thereto, shall be wholly void, unless there be 2 other competent subscribing witnesses to the same: but a mere charge on the lands of the devisor for the payment of debts shall not prevent his creditors from being competent witnesses to his will."
*91 As suggested in 94 CJS, pp 998, 999, supra, the avoidance of a beneficial devise or legacy to a witness destroys the basis for a claim of disqualification to act as such witness. Such conclusion is in accord with prior decisions of this Court, among which may be cited In re Baldwin's Estate, 311 Mich 288. There a provision in a codicil attached to the will in dispute gave the sum of $10,000 to 1 of the 2 witnesses to such codicil, who was also 1 of the executors. It was held that the bequest was void but that, with the exception thereof, the will (p 296) "fulfilled all of the legal requirements for validity."
In Parrish v. Van Domelen, 335 Mich 23, the testatrix directed in her will that after the payment of a legacy to her brother the residue of the estate should be divided equally among 6 beneficiaries, 2 of whom were the witnesses to the will. It was conceded that the provision for the witnesses was void under the statute. The validity of the will, however, was not questioned. In In re Dalton Estate, 346 Mich 613, a legacy of $5,000 was given to 1 of the 2 witnesses to the will. Such provision was held void but the validity of the will was recognized, and the order of the circuit court holding it entitled to probate was affirmed. These decisions and others of like import may properly be regarded as indicating the interpretation that has been given in Michigan to the statutory provisions above quoted. Such provisions are applicable under the facts in the instant case. The common-law rule must be regarded as modified thereby and, in consequence, the trial court was not in error in holding that the witnesses to the will of Charles Fay were competent within the meaning of the statute. Neither was disqualified from testifying on the ground of any interest or interests, if such there were, given thereto by the will. Whether any beneficial interest within the meaning of the statute was given to Mr. Kohn is not before *92 us on this appeal. We are here concerned solely with the question whether the will is entitled to probate.
It is claimed by appellant that the relation between testator and his attorney was such as to raise a presumption of undue influence, and that such presumption was not rebutted by proofs. That such presumption is rebuttable is not open to question. As pointed out in Hill v. Hairston, 299 Mich 672, 679, the existence of the presumption does not operate to throw the burden on the defendant of establishing that the transaction was free from undue influence. The Court there quoted with approval from In re Bailey's Estate, 186 Mich 677, 692, as follows:
"`It is true that a presumption is raised that calls for an explanation, but the burden of proof to show undue influence is not thereby shifted.'"
The following language from the opinion of the Court in Gillett v. Michigan United Traction Co., 205 Mich 410, 414, was also quoted:
"`It is now quite generally held by the courts that a rebuttable or prima facie presumption has no weight as evidence. It serves to establish a prima facie case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself.'"
The decision in In re Jennings' Estate, 335 Mich 241, is in accord with the above cases. It was there held that the prima facie case resting on the presumption was rebutted by evidence, and that the presumption could not be weighed against evidence. In the case at bar it is shown by undisputed testimony that the testator was a man of strong will and inclined to follow his own ideas. He had been successful *93 in his business, which he was engaged in carrying on at the time the will was executed. In the preparation of the will it was natural for him to consult his attorney, but the record is wholly devoid of any indication that he was induced by his attorney, or by anyone else, to make provisions in his will that were not in accord with his own wishes. There is no proof to dispute the testimony that the provisions of the will were explained to testator, that he understood them, and expressed his satisfaction therewith when the will was finally put in the form that he desired.
Apparently Mr. Fay was greatly interested in the establishing of a home for aged people, although in so doing he did not neglect to make reasonable provision for his relatives. Under the circumstances it may not be said that the will in question was an unnatural one, or that the act of the testator in naming his attorney as trustee for the purpose of carrying out the provisions of the will indicated the exercise of undue influence. It is also apparent from the proofs that testator was not in an enfeebled condition, either physically or mentally. Without discussing the testimony in detail, it fairly appears therefrom that what the attorney sought to do was to ascertain the wishes of Charles Fay and to express them in proper form. Any inference that might arise from the relations of the parties is met by affirmative proof that no undue influence was in fact exerted, and there is no evidence to the contrary.
On the trial in circuit court contestant called as a witness a former employee of Charles Fay, who was questioned with reference to a conversation had with Mr. Fay in April or May, 1955, preceding the execution of the will on July 26th of that year. She was asked to repeat what Mr. Fay had said with reference to a trust. Objection to the question was interposed and sustained. The court was not advised *94 as to the purpose of the testimony nor does it appear that there was any foundation laid therefor. No request was made by counsel for permission to take the answer to the question on a separate record. Under the circumstances we cannot say that there was prejudicial error in excluding the answer of the witness. It will be noted that the conversation occurred some 2 or 3 months prior to the execution of the will. If the purpose was to show undue influence it was clearly incompetent. No testimony had been introduced before the jury tending to show that such influence had been exerted. In In re Allen's Estate, 230 Mich 584, 591, it was said:
"The exercise of undue influence must be established by testimony wholly independent of statements or declarations of the testator. When undue influence is shown to have been exercised, its effect may be disclosed by the state of mind of the testator and such state of mind may be shown by his statements and declarations."
Of like import is In re Brady's Estate, 295 Mich 472, 476.
It is also argued that the trial court erred in not submitting the question of mental competency of the testator to the jury on the basis of the testimony of a medical witness who first treated Charles Fay on June 2, 1952. It was the opinion of the witness that at the time Mr. Fay was suffering from hardening of the arteries, which condition affected, to some extent, his heart. The witness again saw the testator in March, 1955, at which time he formed a general impression that the patient had "degenerated as far as his personality was concerned," indicating also that he thought his mental condition was somewhat affected as a result of the arteriosclerosis. The witness further indicated that Mr. Fay's condition *95 was "somewhat worse" when he examined him on May 23, 1955.
The doctor was not asked to express an opinion as to the capacity of the testator to make a will on July 26th following his last examination. Apparently he did not see Mr. Fay during the interval or at the time the will was executed. The question was propounded, however, as to whether Mr. Fay could understand "complicated provisions" of a will. Objection to the question was sustained, whereupon counsel for appellant read at some length from the provisions of the will relating to the creating of the trust, the administration thereof, and the powers and duties of the trustee, and requested the opinion of the witness as to whether Mr. Fay would understand such provisions. Objection to the question was sustained. Complaint is made that the ruling was erroneous. However, the undisputed testimony indicated that the testator had repeatedly talked over the provisions of the will with his attorney, and that they had been explained to him to his satisfaction. Without reference to other objections to the form of the question, it omitted any reference to the fact that the language used had been explained. Quite possibly the ordinary layman unfamiliar with the legal terminology customarily used in creating a trust would not fully comprehend the meaning of all expressions employed by the drafting attorney. However, Charles Fay was a man of somewhat extended business experience, and there is nothing in the record to suggest that he was incapable of understanding the explanation made to him by Mr. Kohn. In view of appellant's claim of error based on the ruling of the court the holding in In re Ferguson's Estate, 239 Mich 616, is in point. In that case Justice WIEST, who wrote the unanimous opinion of the Court, said, in part, in commenting on the testimony of expert medical witnesses (p 626):
*96 "Evidently neither one of these experts had in mind the true rule with reference to legal capacity to make a will. Both experts had read the will and seemed to think the terms employed therein were beyond the comprehension of testatrix. The technical wording of the will was the exercise of professional art by an attorney, and it was not at all essential that the testatrix comprehend the legal phraseology with the eye of a lawyer, but sufficient if she fully comprehended what was accomplished thereby. Few people understanding the technical language of a deed, and were the understanding of its technical words the test of mental capacity of the grantor few deeds could stand. Underlying the words employed by the lawyer in the will is the simple meaning readily understandable by a layman. No expert can be allowed to consider the technical words in considering the mental capacity of the testator."
As suggested, appellant's medical witness did not express an opinion as to the testamentary capacity of Charles Fay on July 26, 1955. As before noted, he did not see testator on that date or within the preceding 2 months' period. Assuming that Mr. Fay was affected to some extent, both physically and mentally, by the ailment from which he was suffering, the record before us furnishes no basis for a finding that he did not have sufficient mentality to know what property he possessed, of which he was making testamentary disposition, to know who were the natural objects of his bounty, and to understand the disposition of his property that he was making. In re Walker's Estate, 270 Mich 33.
In In re Ferguson's Estate, supra, 627, it was said:
"If Mrs. Ferguson, at the time she executed the will, had sufficient mental capacity to understand the business in which she was engaged, to know and understand the extent and value of her property, and *97 how she wanted to dispose of it, and to keep these facts in her mind long enough to dictate her will without prompting from others, she had sufficient capacity to make the will. A testator may be suffering physical ills and some degree of mental disease and still execute a valid will, unless the provisions thereof are affected thereby."
Among other cases of like import is In re Johnson's Estate, 308 Mich 366.
Measured by the tests that have been repeatedly applied, it may not be said under the proofs in the instant case that Charles Fay, on July 26, 1955, lacked sufficient mental capacity to make a will. Apparently witnesses in close contact with him had no question as to his ability in that respect. He was conducting his business affairs at that time, and continued to do so for several months thereafter. We find no error in the case. The trial judge properly directed a verdict for the proponents and the judgment entered on such verdict is affirmed, with costs to appellees.
DETHMERS, C.J., and KELLY, and KAVANAGH, JJ., concurred with CARR, J.
BLACK, J. (concurring in part).
The trial judge, in the course of his instruction that a verdict be returned upholding the instrument in contest, ruled that there was an absence of evidence of undue influence. Judge Martin thus overruled contestant's claim that the testified relationship between attorney Kohn and testator Fay gave rise to a presumption of undue influence. I agree with him and would decide the point of presumed undue influence on ground that the evidence did not at any stage give rise to the asserted presumption.
Some evidence must show, before the presumption may come to justiciable consideration, that the *98 claimed fiduciary relationship did in fact exist when the instrument in question was conceived and executed (In re Cottrell's Estate, 235 Mich 627). Here there is no such proof of fiduciary trust and dependency, distinguished from professional consultation and the usual relations of attorney and client. Accordingly (and as was done in Salvner v. Salvner, 349 Mich 375, 384, 385), I would apply to contestant's said contention the following rules:
"It is urged that because defendant for a number of years looked after testator's business and property, collecting rents, dividends and mortgage payments for him, and paying taxes, repair bills, et cetera, a fiduciary relationship existed between them, giving rise to a presumption of undue influence on defendant's part. We are mindful of the holdings in In re McMaster's Estate, 163 Mich 210; and Scheibner v. Scheibner, 220 Mich 115; and others of like import, which plaintiffs cite as authority for their claim of a fiduciary relationship here. At the same time, it is to be noted that in In re Cottrell's Estate, 235 Mich 627; and In re Lacroix's Estate, 265 Mich 59, it was held that the mere assisting with and conducting of testator's business affairs does not give rise to a fiduciary relationship. We think the term should be held to mean what the word `fiduciary' implies and that the relationship exists only when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another. No such situation was established here." (Quotation from In re Jennings' Estate, 335 Mich 241, 243, 244.)
Excepting only as to his treatment of the question of presumed undue influence, I concur fully with the reasoning and result Mr. Justice CARR has written.
SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.