*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* JONES ESTATE.

---

LINDA DUNN, as Personal Representative of the ESTATE OF HELEN AGNES JONES, CAROLYN MCGINNIS, and MAUREEN D. PHILLIPS,

      Appellees,

v

HENRY JONES,

      Appellant.

UNPUBLISHED
December 20, 2024
8:30 AM

No. 365288
Wayne Probate Court
LC No. 2019-853230-DE

---

Before: N. P. HOOD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Appellant appeals the probate court's order declaring decedent's, Helen Jones's, 2018 will invalid because of undue influence. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1984, Helen executed a will bequeathing her estate to her husband, Henry Jones, Sr. In the event Jones predeceased her, Helen's estate was to be distributed equally among her five children: appellant, appellees, and their nonparty sister, Deborah. Jones died in 2016, and appellant moved into Helen's home in 2017. Appellant had a history of violence and abuse against Helen, and was formerly banned from the home by Jones for many years. After appellant moved in, he became Helen's primary caregiver, managing her home, health, and daily life. Then, in September 2018, appellant took Helen to an attorney to change her will. The 2018 will did not disinherit the other children, but bequeathed Helen's house solely to appellant. After Helen's death, appellees argued the 2018 will was invalid due to undue influence. The probate court agreed, invalidated the 2018 will, and deemed the 1984 will operative. Appellant now appeals.

## II. STANDARD OF REVIEW

This Court reviews "the probate court's dispositional rulings for an abuse of discretion." *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). This Court reviews "the probate court's findings of fact for clear error." *Id*. "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Appellant argues that the probate court erred when it concluded a presumption of undue influence existed and that appellant failed to rebut it. We disagree.

### A. PRESUMPTION OF UNDUE INFLUENCE

The trial court did not err by finding a presumption of undue influence.

> To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient. [*In re Estate of Karmey*, 468 Mich 68, 75; 658 NW2d 796 (2003) (quotation marks and citation omitted).]

Additionally:

> The presumption of undue influence is brought to life upon the introduction of evidence which would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*Id*. at 73 (quotation marks and citation omitted).]

There is no dispute that appellee satisfies the second and third factors. He would certainly benefit from inheriting the house, and had the opportunity to influence Helen's decision because he was her caregiver and lived in her home. As such, the only issue is whether appellee's relationship with Helen constituted a confidential or fiduciary relationship.

"Although a broad term, "confidential or fiduciary relationship" has a focused view toward relationships of inequality." *Id*. at 74 n 3. "[A] fiduciary relationship exists as fact when there is confidence reposed on one side, and the resulting superiority and influence on the other." *Id*. (quotation marks and citation omitted). "Common examples this Court has recognized include where a patient makes a will in favor of his physician, a client in favor of his lawyer, or a sick person in favor of a priest or spiritual adviser." *Id*. "In these situations, complete trust has been placed by one party in the hands of another who has the relevant knowledge, resources, power, or moral authority to control the subject matter at issue."

In *Salvner v Salvner*, 349 Mich 375, 383-384; 84 NW2d 871 (1957), our Supreme Court concluded that no fiduciary relationship existed between a father and his children, who "unquestionably did many things to assist their father, a perfectly natural course of conduct in view of his physical condition[,]" because "the record [fell] short of establishing that [the father] was governed by their advice or that he depended on them in the making of decisions concerning his business affairs, or otherwise." The Court reasoned that it was clear that the father, "notwithstanding his physical condition, was able to determine for himself what he wished to do and to refuse to act against his own inclinations." *Id*. at 384. Thus, "[w]hat [the children] did to assist [their father] amounted to no more than would be prompted normally by the existing relationship." *Id*. at 384.

On appeal, appellant claims that the probate court concluded a fiduciary relationship existed merely because they were mother and son. Appellant mischaracterizes the trial court's reasoning. Unlike in *Salvner*, in which the children had no more than what appeared to be a standard parent-child relationship with their father, appellant had a profound role in Helen's life. The trial court noted that, appellant, "in his role the last two (2) years of his mother's life as her caretaker, house manager, driver, the monitor [sic] of her medication and holder of her bank card was unquestionably in a trusted and confidential or fiduciary relationship with [Helen] until she died." The probate court's reasoning was supported by appellant's own testimony that Helen had relied on him extensively for her day-to-day activities. He cooked her meals, washed her clothes, washed her feet, shopped for groceries, occasionally took her to medical appointments and picked up her prescriptions, monitored her medications, and had access to her debit card to use if they "needed something[]" like groceries. Additionally, appellant testified he had spent his own money buying furniture for the house after moving in with Helen, and stated he was responsible for maintaining the house from "[t]op to bottom." By appellant's own testimony, it is clear that he served as, and understood himself to be, Helen's caregiver. Indeed, it was appellant who drove Helen to the meeting with the attorney to change her will.

Appellant's relationship with Helen was demonstrably one of inequality, *Karmey*, 468 Mich at 74 n 3, not because it was a mother-son relationship, but because "there [was] confidence reposed on one side and the resulting superiority and influence on the other." *Id*. (quotation marks and citation omitted). The record supports the conclusion that appellant had a confidential or fiduciary relationship with Helen. Thus, the probate court did not err when it found a presumption of undue influence.

## B. REBUTTAL OF UNDUE INFLUENCE

The trial court also did not err in finding that appellant failed to rebut the presumption of undue influence.

"Even when the presumption arises, the ultimate burden of proving undue influence remains on the party alleging that it occurred." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 701; 880 NW2d 269 (2015). "But the presumption satisfies the burden of persuasion, so if a party opposing the allegation of undue influence fails to offer sufficient rebuttal evidence, then the party alleging undue influence will have met its burden of persuasion, i.e., its burden of showing the occurrence of undue influence." *Id*. (quotation marks and citation omitted).

-3-

The probate court reasoned that appellant had failed to rebut the presumption of undue influence because "there [was] little question" that appellant was Helen's " 'caretaker' when this Will was executed[,]" given appellant's own testimony regarding just how dependent on him Helen was. Additionally, Helen, "at the time this Will was created suffered from serious physical and mental health problems which made her very susceptible to such influence." Appellant relied on the medical conclusion that Helen was not incompetent, but, as the probate court noted, the record "clearly established that [Helen] suffered from severe anxiety and depression, a narcotics addiction, hypertension, diabetes, and edema in her lower extremities, all of which made her a vulnerable adult." That she was not formally declared incompetent does not negate the numerous circumstances the probate court considered rendered Helen "a vulnerable adult."

Appellant also relies heavily on the testimony of the attorney who drafted the 2018 will that nothing in her meeting with Helen and appellant gave her cause for concern for Helen's mental health or wellbeing and that she felt Helen entered the will "freely and willingly and knowingly." But, the attorney's limited insight into Helen's circumstances undermines her testimony. The record demonstrates that, in the short amount of time she spent with Helen and appellant, the attorney did not delve deep into Helen's situation. Indeed, the attorney lacked important information regarding Helen's mental health diagnoses and treatments, was unaware that Helen had an earlier will, and did not know that appellant, "a felon, had only recently come to live with [Helen]." The attorney's testimony also did not sufficiently rebut the evidence presented that appellant had anger management issues and was pushing Helen, who was afraid of him, to change her will. Testimony was even presented that Helen was forced to leave her home out of fear of appellant and that she expressed regret after executing the 2018 will. In sum, while the attorney's testimony may have been able to rebut a small fraction of the evidence against him, it was insufficient in the face of the extensive evidence provided by appellants.[1]

Affirmed.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Anica Letica

---

[1] We note that appellant also argues that his own testimony rebutted the presumption of undue influence. But, as appellees correctly note, the probate court found appellees to be more credible than appellant, and this Court "defer[s] to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to [a] reviewing court." *In re Estate of Erickson*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

Appellant also argues that the probate court "relied on strictly circumstantial evidence" and that there was no direct evidence of undue influence. But, it has long been held that circumstantial evidence may be used to demonstrate undue influence so long as it is "evidence of probative force beyond mere suspicion[.]" *In re Fay's Estate*, 197 Mich 675, 686; 164 NW 523 (1917). As the probate court noted, appellees presented sufficient circumstantial evidence of undue influence to adequately satisfy their burden of persuasion.