In the Matter of the ESTATE OF Chris BOYSEN, Deceased.

Genevieve THOMPSON, contestant, petitioner, Appellant,

v.

Raymond BOYSEN, proponent, Respondent.

No. 49747.

Supreme Court of Minnesota.

Aug. 14, 1981.

Walbran, Walbran & Walbran and Mary P. Walbran, Owatonna, for appellant.

William J. Nierengarten, Austin, for respondent.

PETERSON, Justice.

Genevieve Thompson appeals from the order of a three-judge panel of the Dodge County District Court affirming the order of the county court, probate division, admitting to probate a will of decedent Chris Boysen. The issue raised by this appeal is

whether decedent revived the will. Because we believe the relevant statute, Minn. Stat. § 524.2–509(a) (1980), was misapplied below, we reverse and remand for a new trial.

Decedent was the father of appellant Genevieve Thompson and respondent Raymond Boysen, proponent of the will in question. Decedent's wife predeceased him by 30 years. Appellant married and moved to Austin, Minnesota. After respondent married, decedent made his home with respondent and his wife in Hayfield, Minnesota. In 1964 respondent was appointed guardian of decedent's person and estate. In 1973 decedent moved from respondent's home to a residence for the elderly located in Hayfield. He lived there until his death in 1977.

Decedent executed the will on March 12, 1964, when he was 75 years old. In the will he devised all his real property—in large part a 200-acre farm near Hayfield—to respondent on the condition that respondent pay appellant $7,000. Decedent bequeathed his personal property to respondent and appellant in equal shares.

After its execution the will was filed with the Dodge County clerk of court. In 1972 the court removed the will from the courthouse vault in order to review it in connection with a proceeding for the dissolution of respondent's marriage. A few years later respondent learned the will had never been returned to the clerk of court's custody. When attempts by decedent's attorney to locate the will proved unsuccessful, decedent discussed the preparation of a new will with a paralegal employed by the attorney. At the probate court hearing the paralegal described their conversation:

> When he came in, he said that his will had been lost so it was necessary for him to make another will, * * * I had been present and witnessed the first will. He thought perhaps I remembered what was in it. I said too long a time had gone by. I didn't . . . could not remember the details of the first will and we had no copy. He said at that time that it was necessary to make one because he wanted the farm

to go to Raymond. He said at the first will he had given money to Genevieve, the farm to Raymond and a sum of money to Genevieve. He was indecisive as to this amount of money that he should put in to her because he didn't know what money he'd have, you know, what money there would be left to divide for her. He didn't know what . . . valuations would be to . . . things have changed. So he . . . he did ask if this . . . We discussed and we said, well, how did you determine the first amount of money? And he said, well, he had thought that ¾ to ¼ would be a . . . set that sum of money. So we said, 'Well, you can use fractions; you don't have to use sums of money if you don't want to.' And that is why he made a fraction in place of a total sum of money.

Decedent executed the new will on May 13, 1975. It differs from its predecessor in one significant respect: it provides that in order to take decedent's real property respondent must pay appellant a sum equal to one-fourth the property's appraised value. The farm is worth approximately $600,000.

Decedent filed the new will with the clerk of court. He gave respondent an unsigned copy of the will. Respondent put the copy in a safe deposit box.

Efforts to determine the whereabouts of the old will continued. In June 1975 the clerk of court notified decedent's attorney that the old will had been found. In February 1976 the attorney, acting at decedent's direction, withdrew the new will from the court files.

Shortly thereafter, Raymond drove decedent to the attorney's office. The secretary gave decedent the new will and he signed a receipt for it. During the drive back to Hayfield decedent tore the new will in half. At the probate court hearing Raymond testified that decedent handed him the torn will and said: "They maybe have lost it yet. This will give us * * * some sort of an idea on my likes * * * you take care of it." Raymond placed the torn will in a locked box at his home. He removed the copy from the safe deposit box and returned it to decedent. Decedent tore the copy in half.

Decedent died in April of the following year. Raymond, as the executor of decedent's estate, filed a petition for probate of the 1964 will. Genevieve objected to the petition and sought an adjudication of intestacy. The probate court found that decedent revived the 1964 will and accordingly admitted the will to probate. A three-judge panel of the district court affirmed the probate court's order. We granted Genevieve leave to appeal to this court from the district court's determination.

Minn.Stat. § 524.2–509(a) (1980) governs the question whether decedent revived the 1964 will. That statute provides:

If a second will which, had it remained effective at death, would have revoked the first will in whole or in part, is thereafter revoked by acts under section 524.-2–507, the first will is revoked in whole or in part unless it is evident from the circumstances of the revocation of the second will or from testator's contemporary or subsequent declarations that he intended the first will to take effect as executed.[1]

The 1975 will expressly revoked all prior wills and codicils of decedent. The 1975 will was revoked when decedent tore it in half.[2] Under section 524.2–509(a) the 1964 will is not revived unless from "the circumstances of the revocation" of the 1975 will or from decedent's "contemporary or subsequent declarations" it is evident that he intended the 1964 will "to take effect as executed."

■ The probate court found that decedent did so intend. The district court panel held the probate court's finding not clearly erroneous. Our review of a factual finding of a court sitting without a jury is likewise limited to the question whether the finding is clearly erroneous. Minn.R.Civ.P. 52.01, *In re Estate of Balafas*, 293 Minn. 94, 96,

198 N.W.2d 260, 261 (1972). Here, however, we are presented with a case involving the application of a statute we have not previously had occasion to interpret. On this appeal we must initially determine the correct interpretation of section 524.2–509(a) and then decide whether the district court's application of the statute to the facts of this case was consistent with that interpretation.

Where a later will which would have revoked an earlier will is itself revoked, section 524.2–509(a) establishes a presumption against revival of the earlier will. That presumption is rebutted if "the circumstances of the revocation" of the later will or the "testator's contemporary or subsequent declarations" make evident his intent that the earlier will "take effect as executed." In the present case decedent made no declarations indicating such an intent. Our concern, then, is with the meaning of the phrase "the circumstances of the revocation." No court in another jurisdiction that has enacted the Uniform Probate Code appears to have interpreted this phrase.

■■ The question under section 524.2–509(a) is whether a testator, at the time he revoked a will, intended to die intestate or to revive an earlier will. We believe that in allowing the trier of fact to consider "the circumstances of the revocation" when deciding this question the legislature meant to permit an examination of all matters relevant to the testator's intent. Accordingly, the trier of fact should consider the following:

1. Did the testator, at the time he revoked the later will, know whether the earlier will was in existence?

2. If the testator did know that the earlier will was in existence, did he know the nature and extent of his property and the

---

1. Respondent Raymond Boysen is incorrect in contending that Minn.Stat. § 524.2–509(a) (1980) is inapplicable here because the wills were executed before January 1, 1976, the date on which Chapter 524 took effect. Chapter 524 applies to any wills of decedents dying after its effective date. Minn.Stat. § 524.8–101(1) (1980). Decedent died on April 10, 1977.

2. Minn.Stat. § 524.2–507(2) (1980) provides: "A will or any part thereof is revoked * * * by being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction." Neither party to this action argues the 1975 will was not revoked.

disposition made of his property by the earlier will, particularly with respect to persons with a natural claim on his bounty?

3. Did the testator, by action or nonaction, disclose an intent to make the disposition which the earlier will directs?

■ Only if these questions are affirmatively answered should the earlier will be admitted to probate. Because these questions were not addressed below, the district court's order must be reversed and this case remanded for a new trial. By remanding the case we do not intimate an opinion regarding the ultimate result.

Reversed and remanded.

AMDAHL, J., took no part in the consideration or decision of this case.

SCOTT, Justice (dissenting).

I respectfully dissent. The trial court correctly applied Minn.Stat. § 524.2–509(a) (1980), and its findings are not clearly erroneous.

The majority properly notes that in deciding whether a decedent revived an earlier will the probate court is to examine all matters relevant to the decedent's intent. I do not agree, however, that the three questions enumerated in the majority opinion are the relevant criteria for the probate court to consider.

The first question the majority directs the probate court to consider is: "Did the testator, at the time he revoked the later will, know whether the earlier will was in existence?" I do not comprehend the relevance of this question. Whether the testator "knew" the earlier will was in existence is irrelevant. The relevant consideration is whether the testator intended to revive the earlier will.

The second question that the majority directs the probate court to consider is: "Did the testator know the identities of persons with a natural claim on his bounty?" This question is a restatement of the requirement of testamentary capacity outlined by this court in *In re Estate of Healy*, 243 Minn. 383, 386, 68 N.W.2d 401, 403 (1955).[1]

Although I agree that testamentary capacity is necessary to revive a will, I do not agree that the proponents of the 1964 will have the burden of establishing testamentary capacity. Minn.Stat. § 524.3–407 (1980) provides for the burden of proof in contested will cases as follows:

> In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue and heirship. Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. *Contestants of a will have the burden of establishing lack of testamentary intent or capacity,* undue influence, fraud, duress, mistake or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

(Emphasis added.)

Although Minn.Stat. § 524.2–509(a) (1980) places the burden on the proponents of a will to show that the testator intended to revive a will, it does not shift the burden of proof with regard to testamentary capacity. Accordingly, the opponents to a will should have the burden of establishing lack of testamentary capacity. In the instant case, appellants did not prove that testator lacked testamentary capacity at the time the earlier will was revived.

1. This court stated in *Healy* that a testator will be found to have sufficient mental capacity to make a will if at the time of making the will the testator understands "the nature, situation, and extent of his property and the claims of others on his bounty or his remembrance, and he [is] able to hold these things in his mind long enough to form a rational judgment concerning them." *In re Estate of Healy*, 243 Minn. 383, 386, 68 N.W.2d 401, 403 (1955). However, since *Healy* this court has slightly changed the requirement of testamentary capacity so that "testamentary capacity requires only that the testator have capacity to know and understand the nature and extent of his bounty, as distinguished from the requirement that he have actual knowledge thereof." *In re Estate of Jenks*, 291 Minn. 138, 140, 189 N.W.2d 695, 696 (1971).

The third question which the majority directs the probate court to consider is: "Did the testator, by action or nonaction, disclose an intent to make the disposition which the earlier will directs?"

I agree with the majority that the intent of the testator is the critical issue. However, I do not agree with the phrasing of this question. If a testator intends to revive an earlier will he must also intend that the earlier will dispose of his property; therefore the question is redundant. The probate court found that the testator did intend the first will to be effective, and I believe this determination to be sufficient.

Besides disagreeing with the content of the questions which the majority poses to the probate court, I also do not agree that it is appropriate for this court to pose specific inquiries to the probate court. The legislature intended to provide the probate courts with great latitude in examining the circumstances of a revocation to determine whether the testator intended to revive an earlier will. The specific inquiries which the majority directs the probate court to determine are, in my view, contrary to the legislative intent.

Finally, in reviewing a trial court's factual determination, we must consider the evidence in the light most favorable to the prevailing party and uphold the determination unless it is clearly erroneous. *In re Estate of Balafas*, 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972).

At the outset, it should be noted that appellant concedes that decedent was mentally competent at all relevant times and does not claim he acted as a result of undue influence. After decedent was informed that the 1964 will had been found, he authorized his attorney to remove the 1975 will from the court files so that decedent might destroy it.

Significantly, the attorney was not directed to obtain the 1964 will. The appellate tribunal found this fact persuasive, and so do I. If decedent had not intended the 1964 will to be effective, it is unlikely he would have allowed it to remain on file with the probate court. When decedent tore the 1975 will, he said to Raymond: "They maybe have lost [the 1964 will] yet. This will give us * * * some sort of an idea on my likes * * *." This statement, and the simultaneous destruction of the 1975 will, surely indicates a preference for the 1964 will over the 1975 will. Decedent's statement exhibits a concern for the safety of the 1964 will that is understandable in view of the probate court's earlier misplacement of the 1964 will. From this concern for the 1964 will's safety, decedent's intent that the 1964 will be effective is inferrable. Under these circumstances the probate court's finding that decedent intended the 1964 will to take effect as executed was not clearly erroneous.

Because the probate court's findings were not clearly erroneous, the probate court should be affirmed.